# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

IN RE:

SOUTHWEST GEORGIA ETHANOL, LLC,

              Debtor.

CHAPTER 11

Case No. _____

---

## MOTION OF DEBTOR FOR ORDER AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS, (III) AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS, AND (IV) GRANTING AN INTERIM WAIVER OF INVESTMENT AND DEPOSIT REQUIREMENTS

COMES NOW, Southwest Georgia Ethanol, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), and hereby moves for entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing (i) the continued maintenance and use of the Debtor's existing cash management system, (ii) the continued maintenance and use of the Debtor's existing bank accounts, (iii) the continued use of existing business forms and checks; and (iv) a waiver, on an interim basis, of investment and deposit requirements (the "Motion"). In support of the Motion, the Debtor relies upon and incorporates by reference the Declaration of Lawrence Kamp in Support of First Day Motions, filed concurrently herewith (the "Kamp Declaration"). In further support of the Motion, the Debtor, by and through its undersigned counsel, respectfully represents:

## JURISDICTION

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Chapter 11 case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

2.       On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under the Bankruptcy Code.  The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.       No creditors' committee has been appointed by the United States Trustee in this Chapter 11 case.  No trustee or examiner has been appointed in this Chapter 11 case.

4.       A description of the Debtor's business, the reasons for filing this Chapter 11 case, and the relief sought from this Court to allow for a smooth transition into operations under Chapter 11 are set forth in the Kamp Declaration filed with the Court.

## RELIEF REQUESTED

5.       By this Motion, the Debtor seeks entry of an order (the "Order"), pursuant to sections 105(a) and 363 of the Bankruptcy Code, authorizing (a) the continued maintenance and use of the Debtor's existing cash management system, (b) the continued maintenance and use of the Debtor's existing bank accounts, (c) the continued use of existing business forms and checks, and (d) a waiver, on an interim basis, of investment and deposit requirements.

ATLANTA:5282363.1

**BASIS FOR RELIEF**

**A.    The Debtor Should Be Authorized To Continue To Use Its Existing Cash Management System**

6.    Before the commencement of this Chapter 11 case, the Debtor used independent cash management systems to collect, transfer and disburse funds generated by its operations and to accurately record all such transactions as they are made (collectively, the "Cash Management System") in the ordinary course of business.

7.    The Cash Management System consists primarily of three (3) active bank accounts utilized by the Debtor through which the Debtor is able to manage cash receipts and disbursements (collectively, the "Bank Accounts"). A schedule of the Bank Accounts maintained by the Debtor, including the names and addresses of the institutions, the general purpose of the Bank Accounts, and the Bank Account numbers, is attached as Exhibit A hereto.

8.    The Debtor's three active Bank Accounts are held at Amarillo National Bank (Account Nos. xxx982, xxx992, and xxx976). These three accounts are comprised of an operating account, a revenue account and a debt service reserve account, each of which is required to be maintained pursuant to the Debtor's senior credit facility. Pursuant to the Operations and Maintenance Agreement and Services Agreement (collectively, the "Management Agreements") between the Debtor and First United Ethanol, LLC ("FUEL"), FUEL handles the Debtor's disbursements and receipts from the Bank Accounts.

9.    As further set forth on Exhibit A, the Debtor also maintains a subordinated debt reserve account with respect to certain subordinated debt obligations owing to the Mitchell County Development Authority. The Debtor has no access to this account.

10.    In sum, the Debtor's Cash Management System allows for (a) overall corporate control of funds, (b) cash availability when and where needed by the Debtor, and (c) the

3

reduction of administrative costs through a method of coordinating funds collection and movement. The Debtor's smooth transition into, and out of, Chapter 11 depends on its ability to maintain these Bank Accounts and operate this Cash Management System without interruption. The Cash Management System allows the Debtor to manage all of its cash flow needs and includes the necessary accounting controls to enable the tracing of funds through the system to ensure that all transactions are adequately documented and readily ascertainable. The Debtor will continue to maintain detailed records reflecting all transfers of funds. The cash management procedures utilized by the Debtor constitute ordinary, usual and essential business practices and are similar to those used by other major corporate enterprises.

11.     In furtherance of this goal, the Debtor requests that all banks at which the Bank Accounts are maintained (the "Banks") be authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, drafts, wires, or electronic funds transfers presented, issued or drawn on the Bank Accounts on account of a claim arising on or after the Petition Date, provided that sufficient funds are in such Bank Accounts.

12.     The Debtor further requests that the Banks be restrained from honoring any check, draft, wire or electronic funds transfer presented, issued or drawn on the Bank Accounts on account of a prepetition claim unless (i) authorized by an order of this Court, (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtor, and (iii) supported by sufficient funds in the Bank Account in question.

13.     To effectuate the foregoing, the Debtor requests that the Banks be authorized and directed to honor all representations from the Debtor as to which checks should be honored or dishonored. To the extent that the Debtor has directed that any prepetition checks be dishonored,

4

it reserves the right to issue replacement checks to pay the amounts related to such dishonored checks consistent with the orders of this Court.

14.    The operation of the Debtor's business requires that the Cash Management System continue during the pendency of this Chapter 11 case. Requiring the Debtor to adopt a new, segmented cash management system at this early and critical stage of this Chapter 11 case would be expensive, would create unnecessary administrative problems, and would be much more disruptive than productive. Any such disruption could have an adverse impact upon the Debtor's ability to reorganize.

15.    Allowing the Debtor to utilize its prepetition Cash Management System is entirely consistent with applicable provisions of the Bankruptcy Code. Bankruptcy courts routinely permit Chapter 11 debtors to continue using their existing cash management system, generally treating such requests for relief as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also, In re Columbia Gas Sys., Inc.*, 136 13.R. 830, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied, sub nom. *Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).

16.    The Debtor therefore requests authority to continue utilizing its Cash Management System as outlined herein.

**B.    The Debtor Should Be Authorized To Maintain Its Existing Bank Accounts**

17.    The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 cases. These guidelines require a Chapter 11 debtor to, among other things: (i) close all existing bank

accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number and the type of accounts. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtor seeks a waiver of these requirements and authorization to continue using its existing bank accounts.

18.    As noted above, before the Petition Date, the Debtor maintained the Bank Accounts, out of which it managed cash receipts and disbursements. The Debtor routinely deposits, withdraws and otherwise transfers funds to, from and among the Bank Accounts by various methods, including check, wire transfer, automated clearing house transfer, internal bank transfer and electronic funds transfer. The Debtor completes numerous transactions per month through the Bank Accounts.

19.    The Debtor seeks a waiver of the United States Trustee's requirement that the Bank Accounts be closed and that new accounts be opened after the Petition Date. If enforced in this Chapter 11 case, such requirements would cause considerable disruption in the Debtor's business, thereby impairing its efforts to reorganize. The Debtor's Bank Accounts are a part of a carefully constructed cash management system that permits the Debtor to fund its ongoing operations in a streamlined and cost-efficient manner. In order to avoid delays in payments to administrative creditors and to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, it is important that the Debtor be permitted to maintain its existing Bank

6

Accounts. This relief is also necessary to aid the Debtor in its efforts to successfully and rapidly complete a restructuring of its business.

20.     The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and each of the Banks at which the Bank Accounts are maintained, will be directed not to pay, any debts incurred by the Debtor before the Petition Date other than as authorized by this Court.  The Debtor will continue to work closely with the Banks that maintain the Bank Accounts against which checks are drawn in order to ensure that appropriate procedures are in place so that checks issued before the Petition Date on account of obligations of the Debtor, but presented after the Petition Date, will not be honored absent approval from this Court. Accordingly, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, and to aid the Debtor's efforts to complete this Chapter 11 case successfully and rapidly, the Debtor should be permitted to continue to maintain its existing Bank Accounts, notwithstanding the fact that the Bank Accounts are not at banks designated as approved depositories in the Middle District of Georgia by the United States Trustee.

### C.     The Debtor Should Be Granted Authority To Continue To Use Existing Business Forms And Checks

21.     In order to minimize expenses to its estate, the Debtor also seeks authorization to continue using all correspondence and business forms (including without limitation, letterhead, purchase orders, and invoices), without reference to the Debtor's status as a debtor-in-possession.  Most parties doing business with the Debtor undoubtedly will be aware of the Debtor's status as debtor-in-possession as a result of the notoriety of this Chapter 11 case, the press releases issued by FUEL, and any additional press coverage.  Moreover, each of the Debtor's vendors will receive direct notice of the commencement of this Chapter 11 case.

ATLANTA:5282363.1

22.     Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtor's estate and disruptive to the Debtor's business operations, and would not confer any benefit upon those dealing with the Debtor. For these reasons, the Debtor requests that it be authorized to use existing checks and business forms without being required to place the label "Debtor-in-Possession" on each.

23.     Relief similar to that requested in sections A, B and C herein has been granted by courts in other substantial Chapter 11 cases. *See, e.g., In re TitleMax Holdings, LLC*, Case No. 09-40805 (Bankr. S.D. Ga. Apr. 23, 2009) (Davis, J.); *In re Durango Georgia Paper Co.*, Case No. 02-21669 (Bankr. S.D. Ga. Nov. 26, 2002) (Davis, J.); *In re Friedman's Inc.*, Case No. 05-40129 (Bankr. S.D. Ga. Jan. 20, 2005) (Davis, J.); *In re AtheroGenics, Inc.*, Case No. 08-78200 (Bankr. N.D. Ga. Oct. 16, 2008) (Massey, J.); *In re Foamex Int'l. Inc.*, Case No. 05-12685 (Bankr. D. Del. Sept. 21, 2005) (Walsh, J.); *In re Meridian Auto. Systems-Composites Ops., Inc.*, No. 05- 11168 (Bankr. D. Del. Apr. 27, 2005) (Walrath, J.); *In re Rhodes, Inc.*, Case No. 04-78434 (Bankr. N.D. Ga. Nov. 5, 2004) (Diehl, J); *In re Galey & Lord, Inc.*, Case No. 04-43098 (Bankr. N.D. Ga. Aug. 19, 2004) (Diehl, J.); *In re Dan River Inc.*, Case No. 04-10990 (Bankr. N.D. Ga. Apr. 1, 2004) (Drake, J.); *In re SHC, Inc.*, Case No. 03-12002 (Bankr. D. Del. July 2, 2003) (MFW); *In re Centennial HealthCare Corp.*, Case No. 02-74974 (Bankr. N.D. Ga. Dec. 24, 2002) (Massey, J.); *In re The New Power Co.*, No. 02-10835 (Bankr. N.D. Ga. June 17, 2002) (Drake, J.); *In re Grant Broad., Inc.*, 75 B.R. 819, 820 (E.D. Pa. 1987) (referring to order authorizing use of cash collateral and pre-petition bank accounts); *In re New York City Shoes, Inc.*, 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (debtor depositing post-petition funds into pre-petition bank accounts).

ATLANTA:5282363.1

**D.     The Debtor Should Be Granted An Interim Waiver of the Investment and Deposit Requirements**

24.     The Debtor believes that all of the Bank Accounts are in financially stable banking institutions with FDIC insurance (up to applicable limits).

25.     The Debtor believes that its use of the Bank Accounts substantially conforms with the approved investment and deposit practices identified in Bankruptcy Code section 345, and that all money deposits are safe and prudent and yield, under the circumstances, the maximum reasonable net return on such money. Nonetheless, out of an abundance of caution, to the extent that such deposits do not conform with the approved practices identified in Bankruptcy Code section 345, the Debtor seeks to have such requirements waived for an interim period of thirty (30) days so as to allow the applicable banking institutions to accept and hold the Debtor's funds consistent with prepetition practices.

26.     The Debtor believes that sufficient cause exists pursuant to Bankruptcy Code section 345(b) to allow it to deviate from the approved investment practices established by the Bankruptcy Code. The Bank Accounts are comprised of an operating account, a revenue account and a debt service reserve account, each of which is required to be maintained pursuant to the Debtor's senior credit facility.

27.     Accordingly, the Debtor respectfully requests authority (a) to continue depositing funds in a safe and prudent manner, in accordance with the Debtor's prepetition practices notwithstanding that such practices may not strictly comply in all respects with the approved investment practices set forth in Bankruptcy Code section 345, and (b) for the applicable institutions to accept and hold or invest such funds in accordance with the Debtor's prepetition practices.

ATLANTA:5282363.1

28.     Section 345 of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States" (11 U.S.C. § 345(b)), section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.*

29.     A court may relieve a debtor-in-possession of the restrictions of Bankruptcy Code section 345(b) on a final basis for "cause." The Debtor believes that "cause" exists to waive the investment and deposit restrictions pursuant to Bankruptcy Code section 345(b). Courts have considered a number of factors in seeking to determine whether "cause" exists pursuant to Bankruptcy Code section 345(b). *See In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (identifying various factors relevant to the existence of "cause", including the sophistication and size of the Debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the Debtor's safeguards for the funds, the Debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver under the circumstances).

30.     Congress has emphasized that Bankruptcy Code section 345's investment and deposit requirements may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but such requirements] can work to needlessly handcuff [a]

10

ATLANTA:5282363.1

larger, more sophisticated Debtor." H.R. Rep, 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Thus, Congress added the waiver clause in section 345(b) "to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Sys., Inc.*, 33 F.3d 294, 1994 WL 463514 (3d Cir. Del.)." *Id.*

31.     The Debtor believes that "cause" exists to waive the investment and deposit restrictions pursuant to section 345(b) of the Bankruptcy Code to the extent that the Debtor's cash management deposits do not comply. As set forth above, the Bank Accounts are maintained as either "zero balance" or minimum balance accounts and typically do not maintain significant fund balances overnight. Therefore the investment and deposit restrictions of section 345(b) of the Bankruptcy Code can be waived with respect to these accounts as not applicable. Further, the Debtor does not make any short-term or long-term investments given its current Cash Management System.

32.     To the extent that any Bank Account is construed to have a balance substantial enough to fall within the ambit of the protections provided by section 345 of the Bankruptcy Code, the Debtor believes that the safety presented by the financially stable banking institutions with whom the Debtor bank constitutes sufficient cause pursuant to section 345(b) of the Bankruptcy Code to allow the Debtor to deviate from approved investment and deposit practices established by the Bankruptcy Code. Additionally, to the extent that any of the financial institutions with whom the Debtor bank are not listed among the United States Trustee's approved depositories and further information is so required by the United States Trustee, the Debtor will confer with the United States Trustee and provide such information in advance of any final hearing, if necessary. Accordingly, the Debtor respectfully requests authority to

11

maintain its Bank Accounts in a safe and prudent manner in accordance with its existing banking practices.

33.     The Debtor submits that, given the totality of the circumstances, its request is reasonable and cause exists for the Court to waive the requirements of section 345(b). Relief similar to that requested herein has been granted by courts in other substantial Chapter 11 cases. *See, e.g., In re TitleMax Holdings, LLC*, Case No. 09-40805 (Bankr. S.D. Ga. Apr. 23, 2009) (Davis, J.) [Docket No. 30]; *In re Pike Nursery Holding, LLC*, Case No. 07-79129 (Bankr. N.D. Ga. Nov. 16, 2007) (Diehl, J.) [Docket No. 41]; *In re Friedman's Inc.*, Case No. 05-40129 (Bankr. S.D. Ga. Jan. 20, 2005) (Davis, J.) [Docket No. 56]; *In re Foamex Int'l. Inc.*, Case No. 05-12685 (Bankr. D. Del. Sept. 21, 2005) (Walsh, J.) [Docket No. 39]; *In re Meridian Auto. Systems-Composites Ops., Inc.*, No. 05-11168 (Bankr. D. Del. Apr. 27, 2005) (Walrath, J.) [Docket No. 27] ; *In re Rhodes, Inc.*, Case No. 04-78434 (Bankr. N.D. Ga. Nov. 5, 2004) (Diehl, J.) [Docket No. 39]; *In re Centennial HealthCare Corp.*, Case No. 02-74974 (Bankr. N.D. Ga., December 24, 2002) (Massey, J.) [Docket No. 43].

**E.     Bankruptcy Rule 6003 has Been Satisfied and Bankruptcy Rule 6004 Should be Waived**

34.     The Debtor further submits that because the relief requested is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

35.     To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

ATLANTA:5282363.1

## NOTICE

36.     No trustee, examiner, or creditors' committee has been appointed in this Chapter

11 case.  Notice of this Motion will be given to:  (a) the Office of the United States Trustee; (b)

Jennifer C. Hagle, Esq., counsel to the Agents (as defined in the Kamp Declaration); (c) all

parties included on the Debtor's list of twenty (20) largest unsecured creditors, and (d) the

financial institutions at which the Bank Accounts listed on Exhibit A are maintained.    The

Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

37.     No previous request for the relief sought herein has been made to this or any other

court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an Order,

substantially in the form annexed hereto, granting the relief requested in the Motion and such

other and further relief as may be just and proper.

This 1st day of February, 2011.

MCKENNA LONG & ALDRIDGE LLP

s/ J. Michael Levengood
Gary W. Marsh
Georgia Bar No. 471290
J. Michael Levengood
Georgia Bar No. 447934
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
404-527-4000 (phone)
404-527-4198 (fax)
gmarsh@mckennalong.com
mlevengood@mckennalong.com

*Proposed Counsel for Southwest Georgia
Ethanol, LLC, Debtor in Possession*

13

## EXHIBIT A

### Debtor Bank Accounts

| | | | |
|---|---|---|---|
| Amarillo National Bank | | Operating Account | xxx982 | Active |
| Address:   410 S. Taylor<br>PO Box 1<br>Amarillo, TX | Revenue Account | xxx992 | Active |
| | Debt Service<br>Reserve Account | xxx976 | Active |
| Contacts:   800-378-8339 | | | |
| Darren Jenks, VP<br>(806) 378-8339 | | | |
| Sally Frierson<br>(806) 378-8230 | | | |

| | | |
|---|---|---|
| Regions Bank | Subordinated debt<br>reserve accounts | xxxxxx0028<br>xxxxxx0037<br>xxxxxx0064<br>xxxxxx0055<br>xxxxxx0082 |
| Address:   260 Peachtree Street<br>Suite 1800<br>Atlanta, GA 30303 | | |
| Contacts:   Richard Jaegle - Trustee<br>(404) 581-3739 | Note:   This is a subordinated debt reserve account for the Mitchell County Development Authority Revenue Bond.  The Debtor has no access to the account. | |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

IN RE:

SOUTHWEST GEORGIA ETHANOL, LLC,

CHAPTER 11

Case No. _____

Debtor.

**ORDER AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS, (III) AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS, AND (IV) GRANTING AN INTERIM WAIVER OF INVESTMENT AND DEPOSIT REQUIREMENTS**

Upon the motion (the "Motion")[1] of the Debtor for an order, pursuant to sections 105 and 363 of the Bankruptcy Code, authorizing (i) the continued maintenance and use of the Debtor's existing cash management system, (ii) the continued maintenance and use of the Debtor's existing bank accounts, (iii) the continued use of existing business forms and checks; and (iv) a

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

waiver, on an interim basis, of investment and deposit requirements and upon the Kamp Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED.

### CONTINUED USE OF CASH MANAGEMENT SYSTEM

2.      The Debtor is authorized to continue using the Cash Management System to manage its cash in the ordinary course of business and to otherwise transfer funds consistent with its past practices.

3.      The Debtor shall maintain records of all transfers within the Cash Management System so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtor's books and records, to the same extent as maintained prior to the commencement of this Chapter 11 case.

4.      All banks at which the Debtor maintains bank accounts (the "Banks"), including, without limitation, those accounts listed on Exhibit A attached hereto (collectively with any and all other bank accounts maintained by the Debtor, the "Bank Accounts"), are authorized and directed to (a) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course and (b) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on

2

the Bank Accounts (collectively, the "Debits") on account of a claim arising on or after the Petition Date so long as there are sufficient funds in the relevant Bank Accounts.

5.     The Banks are restrained and prohibited from honoring any Debit presented, issued, or drawn on any Bank Account on account of a claim arising prior to the Petition Date (a "Prepetition Debit") unless the payment of such claim: (a) has been authorized by an order of this Court, (b) has been directed by the Debtor and not otherwise prohibited by a "stop payment" request received by the relevant Bank from the Debtor, and (c) is supported by sufficient funds in the relevant Bank Account.

6.     Subject to the provisions of this Order, the Banks are authorized and directed to rely on the representations of the Debtor as to which Debits are authorized to be honored or dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court. To the extent that the Debtor directs that any Debit be dishonored, the Debtor may issue replacement Debits consistent with the orders of this Court.

7.     Each Bank that maintains one or more Bank Accounts shall implement reasonable handling procedures to effectuate the terms of this Order. No Bank that implements such handling procedures shall be liable to the Debtor or its estate, or otherwise held in violation of this Order, for honoring a Prepetition Debit or other Debit (a) at the direction of the Debtor to honor such Prepetition Debit or other Debit, (b) in the good faith belief that the Court has authorized that such Prepetition Debit or other Debit be honored, or (c) as a result of an innocent mistake made despite implementation of such handling procedures.

ATLANTA:5282363.1

8.     The Debtor is authorized to implement such changes to the Cash Management System as the Debtor may deem necessary or appropriate in the ordinary course of business; provided that such changes are consistent and in accordance with the Management Agreements.

9.     The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtor's name, whether or not such Bank Accounts are listed on Exhibit A attached hereto.

### CONTINUED USE OF BANK ACCOUNTS

10.    The requirements of the U.S. Trustee Guidelines that the Debtor close all existing bank accounts and open new debtor in possession accounts are hereby waived.  Further, the requirements of the U.S. Trustee Guidelines that the Debtor establish specific bank accounts for tax payments are hereby waived.

11.    The Bank Accounts are deemed debtor-in-possession accounts, the Debtor is authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date, including, without limitation:  (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, and other Debits, (b) to pay postpetition ordinary course bank fees in connection with the Bank Accounts, (c) to perform obligations under the documents and agreements governing the Bank Accounts, (d) to treat the Bank Accounts for all purposes as accounts of the Debtor in its capacity as debtor in possession.

### CONTINUED USE OF BUSINESS FORMS AND CHECKS

12.    The Debtor is authorized to continue using all checks and other banking forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtor's status as debtor-in-possession.

ATLANTA:5282363.1

## INTERIM WAIVER OF INVESTMENT AND DEPOSIT REQUIREMENTS

13.     The Debtor is authorized to invest and deposit funds in accordance with the Debtor's established investment and deposit practices, guidelines and the Management Agreements, all in effect as of the commencement of this Chapter 11 case (as described in the Motion) and, to the extent that such investment and deposit practices and guidelines are not consistent with the requirements of section 345(b) of the Bankruptcy Code, such requirements are waived for the period from the date of entry of this order and for thirty (30) days thereafter so as to allow the applicable Banks to accept and hold the Debtor's funds consistent with prepetition practices.

## OTHER MATTERS

14.     The requirements of Bankruptcy Rule 6004(a) are waived.

15.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

17.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order

18.     The Debtor shall, within three (3) business days hereof, serve a copy of this Order on all parties that received notice of the Motion, as well as all parties that have appeared in this Chapter 11 case and requested notice since the Debtor filed the Motion, and file a certificate of service evidencing such service.

### - End of Document -

ATLANTA:5282363.1

**Prepared and Presented by:**

MCKENNA LONG & ALDRIDGE LLP

s/ J. Michael Levengood
Gary W. Marsh
Georgia Bar No. 471290
J. Michael Levengood
Georgia Bar No. 447934
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
404-527-4000 (phone)
404-527-4198 (fax)
gmarsh@mckennalong.com
mlevengood@mckennalong.com

*Proposed Counsel for Southwest Georgia
Ethanol, LLC, Debtor in Possession*

6

## EXHIBIT A

### Debtor Bank Accounts

| | | | |
|---|---|---|---|
| Amarillo National Bank | Operating Account | xxx982 | Active |
| Address:   410 S. Taylor<br>PO Box 1<br>Amarillo, TX | Revenue Account | xxx992 | Active |
| | Debt Service<br>Reserve Account | xxx976 | Active |
| Contacts:   800-378-8339 | | | |
| Darren Jenks, VP<br>(806) 378-8339 | | | |
| Sally Frierson<br>(806) 378-8230 | | | |

| | | |
|---|---|---|
| Regions Bank | Subordinated debt<br>reserve accounts | xxxxxx0028<br>xxxxxx0037<br>xxxxxx0064<br>xxxxxx0055<br>xxxxxx0082 |
| Address:   260 Peachtree Street<br>Suite 1800<br>Atlanta, GA 30303 | | |
| | Note:   This is a subordinated debt reserve account for the Mitchell County Development Authority Revenue Bond.  The Debtor has no access to the account. | |
| Contacts:   Richard Jaegle - Trustee<br>(404) 581-3739 | | |