UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| IN RE:<br><br>SOUTHWEST GEORGIA ETHANOL, LLC,<br><br><br>Debtor. | CHAPTER 11<br><br>Case No. _____ |

## MOTION TO ESTABLISH CRITICAL VENDOR PAYMENT PROCEDURES

COMES NOW, Southwest Georgia Ethanol, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), and moves the Court (this "Motion") to enter an Order substantially in the form attached hereto as Exhibit A (the "Critical Vendor Order") authorizing the establishment of critical vendor payment procedures. In support of this Motion, the Debtor states as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

### Background

2.      On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

ATLANTA:5282375.2

3. No creditors' committee has been appointed by the United States Trustee in this Chapter 11 case. No trustee or examiner has been appointed in this Chapter 11 case.

4. A description of the Debtor's business, the reasons for filing this Chapter 11 case, and the relief sought from this Court to allow for a smooth transition into operations under Chapter 11 are set forth in the Declaration of Lawrence Kamp in Support of First Day Motions (the "Kamp Declaration") filed with the Court.

## Relief Requested

5. In its day-to-day operations, the Debtor heavily relies on many suppliers and service providers. Like many large manufacturing companies, the Debtor relies on vendors such as the manufacturers and servicers of equipment for its factories and the suppliers of the custom-made packaging materials it uses to ship products to its customers.

6. The Debtor believes that the goods and services supplied by certain of its vendors are critical to its operations in that its business could not continue to operate without access to such goods and services. As of the Petition Date, many of the vendors deemed critical by the Debtor have outstanding claims against the Debtor arising from prepetition deliveries of goods and prepetition performance of services. The Debtor anticipates it will be able to continue to transact with a majority of the vendors on which its day-to-day business operations depend despite nonpayment by the Debtor of such vendors' prepetition claims. Nonpayment of the prepetition claims of certain of the Debtor's vendors, however, creates a significant risk of disruption to the Debtor's operations. Thus, the Debtor anticipates there will be instances in which payment of the prepetition claims of certain vendors will benefit all creditors because such payment will allow the Debtor's business to avoid a likely loss, or to gain a likely economic advantage, disproportionate to the amount of such vendors' prepetition claims.

2

7.      Accordingly, the Debtor requests that the Court establish Critical Vendor Payment Procedures (as defined below) by which the Debtor may pay certain Critical Vendors (as defined below). In exchange for payment by the Debtor of any Critical Vendor Claim (as defined below), the Debtor intends to require such Critical Vendor to agree to transact with the Debtor, for such duration of time as agreed between the Debtor and such Critical Vendor on Customary Trade Terms (as defined below), unless otherwise agreed by the Debtor and the Critical Vendor.

### The Critical Vendor Payment Procedures

8.      In preparation for filing its Chapter 11 case, the Debtor evaluated the numerous goods and services vendors likely to have outstanding claims against the Debtor as of the Petition Date. The Debtor analyzed whether there were any providers of goods and services that are critical to its ability to operate its business. The Debtor distinguished certain of its vendors as "Critical Vendors" according to the following criteria:

> (a)     Whether (i) the goods and services supplied by a particular vendor are essential to the continued operation of the Debtor's business and cannot be obtained from any other vendor, or, could be obtained from another vendor only at such extra cost or at such delay as to outweigh the cost of paying the prepetition claim, or (ii) whether the vendor was in possession of valuable property of the Debtor that is necessary to its ability to generate revenue;

> (b)     Whether the cost of paying the prepetition claim of such vendor, to the extent that such claim is fixed, noncontingent, liquidated, and undisputed (the "Critical Vendor Claim"), is outweighed by the benefit such payment is likely to secure on behalf of the Debtor's estate and other creditors; and

> (c)     Whether such vendor would likely continue doing business with the Debtor notwithstanding nonpayment of prepetition claims, such as those vendors subject to long-term, non-terminable contractual commitments.

9.      According to the above criteria, the Debtor was able to distinguish, from the many vendors with whom the Debtor deals, a small group of vendors that the Debtor deems to be Critical Vendors. These vendors provide goods and services to the Debtor necessary to keep its

ATLANTA:5282375.2

plants operating. Many of the Critical Vendors are either sole-source suppliers or are the only vendors able to meet the Debtor's requirements such that it would take substantial time for the Debtor to find alternate suppliers or service providers. In addition, many of the Critical Vendors are small companies and any one payment by the Debtor represents a significant portion of its income.

10. The Debtor perceives a risk that, for certain of its Critical Vendors, a default by the Debtor would extinguish the Debtor's access to necessary goods and services, because (i) the vendor providing the particular good or service will be put out of business by the Debtor's nonpayment, (ii) because the vendor will refuse to continue doing business with the Debtor if its prepetition claim remains unpaid, or (iii) because the vendor may choose to continue doing business with the Debtor only upon the condition that the Debtor provide trade term accommodations such as advance deposits or payment by wire transfer prior to delivery. Alternatively, the Debtor believes that vendors in possession of the Debtor's property may assert liens on such property and/or will not return such property to the Debtor in the ordinary course of business as long as its prepetition claims remain unpaid.

11. The Debtor anticipates that there may be instances in which the Debtor will require authority to pay the prepetition claim of a Critical Vendor that has refused to continue to deal with the Debtor, that is at risk of going out of business, or that has demanded trade term accommodations the Debtor cannot meet, because the Debtor will be unable to operate its business without the goods and supplies provided by such Critical Vendor. The Debtor feels it will not be able to fulfill its duty to its estate and creditors to preserve the value of its business without the authority to pay the prepetition claims of those vendors the Debtor has identified as Critical Vendors as and when such payments prove necessary.

ATLANTA:5282375.2

12. Accordingly, the Debtor proposes the establishment of the following procedures for payment of prepetition claims of Critical Vendors if and when such payments become necessary (the "Critical Vendor Payment Procedures"):

(a) First, to the extent an entity claims a lien against property of any of the Debtor's estate to secure a Critical Vendor Claim (which lien, upon advice of counsel, the Debtor reasonably believes to be valid) and to the extent payment of such Critical Vendor Claim is, in the exercise of the Debtor's business judgment, in the best interests of its estate, the Debtor is authorized to pay such Critical Vendor Claim. The Debtor shall file with the Court and provide to the United States Trustee (the "U.S. Trustee"); Jennifer C. Hagle, Esq., counsel to the Agents (as defined in the Kamp Declaration); and any committee appointed under section 1102 of the Code (the "Creditors Committee", collectively, the "Notice Parties") an accounting, itemized by claims paid, of any debts so paid.

(b) To the extent an entity asserts any Critical Vendor Claim, the payment of which the Debtor, upon advice of counsel, reasonably believes would be authorized under existing law, the Debtor may pay such claim. The Debtor shall file with the Court, and provide to the Notice Parties an accounting of each such claim paid, including the bases on which payment of such claim is warranted under existing law. Upon motion of any party in interest filed within thirty (30) days of such accounting, the Debtor (and the creditor paid) shall be required to show cause why payment of such claim should be deemed by the Court to be properly authorized. If the Court determines that a payment was not properly authorized, the Debtor is authorized to, in its discretion and without further order of the Court, declare that payments made to such Critical Vendor on account of its Critical Vendor Claim shall be deemed to have been in payment of then-outstanding postpetition claims of such vendor without further order of the Court or action by any person or entity. In addition, such Critical Vendor shall immediately repay to the Debtor any payments made to it on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of any setoff, claim, provision for payment of reclamation or trust fund claim, or otherwise.

(c) Any entity provided with a copy of the order authorizing these procedures (the "Order") shall be deemed on notice that a refusal to provide postpetition goods or services to any Debtor by reason of non-payment of any prepetition debt, and despite assurance, in the form of a deposit or prepayment, that such entity will suffer no loss through provision of postpetition goods or services, absent good cause, constitutes a willful violation of section 362(a)(6) of the Code.

13. As a prerequisite to payment of any Critical Vendor Claim, the Debtor intends to require Critical Vendors to agree to transact with the Debtor postpetition on Customary Trade

5

Terms (as defined below) for such duration of time as agreed to by the Debtor and the particular Critical Vendor, unless otherwise agreed to by the Debtor and the particular Critical Vendor. "Customary Trade Terms" are those trade terms, which include, but are not limited to, credit terms, credit limits, historical pricing conventions, historical product volumes, cash discounts, timing of payments, allowances, rebates, normal product mix, and availability and other applicable terms and programs acceptable to the Debtor, that were most favorable to the Debtor and in effect between such Critical Vendor and the Debtor at any time during the 12 month period preceding the Petition Date. If after receipt of payment for any Critical Vendor Claim, a Critical Vendor refuses to continue to provide products, supplies or services upon the Customary Trade Terms as agreed to with the Debtor, then the Debtor may (i) declare that any payment made to such Critical Vendor on account of its prepetition claim shall be deemed to have been in payment of then-outstanding postpetition claims of such Critical Vendor without further order of the Court or action by any person or entity; (ii) require that the Critical Vendor immediately repay to the Debtor any payments made to it on account of its prepetition claim, without the right of any setoff, claims provision for payment of reclamation or trust fund claim, or otherwise; and (iii) seek redress with the Court for failure to comply with the Customary Trade Terms.

### Ample Support Exists to Warrant Establishment of the Critical Vendor Payment Procedures

14. Section 1107(a) of the Bankruptcy Code, which provides that a debtor-in-possession shall perform all the functions and duties of a trustee, contains an implied duty that a debtor-in-possession act as a fiduciary "to protect and preserve the estate, including an operating business's going-concern value," on behalf of the Debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

6

15. Pursuant to section 105(a) of the Bankruptcy Code, "[t]he [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code thus empowers the Court to issue any order "necessary or appropriate" to allow a debtor-in-possession to fulfill its duty to preserve the going-concern value of the business, including an order authorizing payment in full or in part of certain prepetition claims of unsecured creditors prior to confirmation of a plan.

16. Courts have long recognized that payment of some categories of prepetition obligations outside the plan of reorganization is often necessary to realize the paramount goal of rehabilitation of a debtor. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175, 177 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.") (citation omitted).

17. Courts routinely authorize pre-plan payment of prepetition unsecured claims when such claims are entitled to priority status under the Bankruptcy Code and it is reasonable to believes such payments will benefit the Debtor's estate and creditors. *See, e.g., In re CEI Roofing*, 315 B.R. at 59–61. In *CEI Roofing* the court authorized payment of prepetition employee wage claims to the extent that such claims would have been entitled to priority status, and likely payment in full, at the time of plan confirmation, (*see* 11 U.S.C. § 503(a)(3)), because early payment of the claims was "common sense" in that it prevented the Debtor's employees from leaving and thus preserved its business. *CEI Roofing*, 315 B.R. at 61. Because claims entitled to priority status will likely be paid in full, courts frequently authorize early payment of priority status claims when such timing and early payment is intended to prevent some harm or

7

to procure some benefit for the estate. *See id.* at 60–61 (stating that as long as higher priority creditors fail to timely object, authorization of early payment in full of priority claims does not trigger concerns of upsetting the priority scheme of the Bankruptcy Code nor of unfairly discriminating amongst general unsecured creditors).

18. In addition, courts have authorized Chapter 11 debtors to make payment in full or in part of the prepetition claims of nonpriority general unsecured creditors where necessary to preserve or enhance the value of the Debtor's estate to the benefit of all creditors. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (authorizing payment of certain critical trade vendors).

19. The court in *CoServ* noted that there are occasions when a debtor-in-possession's duty to preserve the business "can only be fulfilled by the pre-plan satisfaction of a prepetition claim." 273 B.R. at 497. Rather, payment of prepetition claims is necessary, and may be authorized, whenever it is established that (1) it is critical the debtor deal with the claimant, (2) a failure to deal with the claimant risks probable harm or eliminates an economic advantage disproportionate to the amount of the claim, and (3) there is no practical or legal alternative to payment of the claim (the "<u>CoServ</u> Test"). *Id.* at 498. The *CoServ* court provided an illustrative list of situations where payment of prepetition obligations by a debtor-in-possession may be a necessary predicate to preservation of the business. For example, the court noted that "[c]laims may require payment to avoid loss of a license through the exercise of a jurisdiction's police power." *Id.* at 497. In addition, prepetition warranty or refund claims of consumer customers fell into this category because, if not honored, it "could so harm the Debtor's good will as to destroy its going concern value." *Id.* The court stated that, "like employees, the bankruptcy court cannot force consumers to deal with the debtor, nor is there any practical alternative to

satisfying warranty or refund claims." *Id.* The court also noted that where "payment of a prepetition unsecured claim is the only means to effect a substantial enhancement of the estate ... payment would be justified." *Id.*

20. Advance proof of necessity of payment, however, is not required in every instance. *See In re Mirant Corp.*, 296 B.R. 427, 429 (N.D. Tex. 2003). The *Mirant* court recognized that a company operating in Chapter 11, especially early in the case, is in a "precarious position," and that serious damage could occur to a Debtor's business were a court to require advance proof that each payment of a prepetition claim outside a confirmed plan of reorganization was necessary within the meaning of the *CoServ* Test. 296 B.R. at 429. Thus, because it "[did] not wish [the] [d]ebtors' business seriously damaged by the delay required to satisfy the court that a particular creditor should be paid," the court granted the Debtor general authority to pay the prepetition claims of critical vendors as necessary and established procedures substantially similar to those requested by the Debtor in this Chapter 11 case. *Id.* at 429–30; cf., In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004).

21. Establishment of the Critical Vendor Payment Procedures by which the Debtor may pay the claims of those vendors whom the Debtor has distinguished as Critical Vendors is warranted. The Critical Vendor Payment Procedures will allow the Debtor to pay the Critical Vendor Claims, as necessary to protect the interests of the Debtor's estate, but only to the extent such payments are in accordance with the Approved Budget (as defined in the Kamp Declaration). The Critical Vendor Payment Procedures will also ensure that no Critical Vendor holds the Debtor hostage and unreasonably demands payment of its prepetition claims. The Debtor believes that authority, but not direction, to pay the Critical Vendor Claims as such payments become necessary is crucial for the Debtor's seamless transition into Chapter 11, will

ATLANTA:5282375.2

avoid immediate and irreparable harm, and will serve the best interests of the Debtor, its estate, and its creditors.

22. Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted.

### Request for Authority for Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Critical Vendors

23. The Debtor further request that the Court authorize and direct all applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn or electronic funds transferred to pay Critical Vendor Claims, whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic transfers are identified by the Debtor as relating directly to the authorized payment of the Critical Vendor Claims. The Debtor also seeks authority to issue new postpetition checks, or effect new electronic fund transfers, on account of such Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtor's Chapter 11 case.

### Waiver Of Bankruptcy Rules 6004(a) and (h)

24. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

25. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party in interest's right to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code. Likewise, if the

ATLANTA:5282375.2

Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtor to accept any services, to accept the shipment of goods, or prevent the Debtor from returning or rejecting goods.

### Notice

26.     Notice of this Motion will be given to: (a) the Office of the United States Trustee; (b) Jennifer C. Hagle, Esq., counsel to the Agents (as defined in the Kamp Declaration); and (c) all parties included on the Debtor's list of twenty (20) largest unsecured creditors. The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE the Debtor respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

This 1st day of February, 2011.

> MCKENNA LONG & ALDRIDGE LLP
>
> s/ J. Michael Levengood
> Gary W. Marsh
> Georgia Bar No. 471290
> J. Michael Levengood
> Georgia Bar No. 447934
> 303 Peachtree Street, Suite 5300
> Atlanta, Georgia 30308
> 404-527-4000 (phone)
> 404-527-4198 (fax)
> gmarsh@mckennalong.com
> mlevengood@mckennalong.com
>
> *Proposed Counsel for Southwest Georgia*
> *Ethanol, LLC, Debtor in Possession*

ATLANTA:5282375.2

## EXHIBIT A

## PROPOSED ORDER

ATLANTA:5282375.2

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| IN RE:<br><br>SOUTHWEST GEORGIA ETHANOL, LLC,<br><br><br>Debtor. | CHAPTER 11<br><br>Case No. _____ |

ORDER GRANTING DEBTOR'S MOTION TO
ESTABLISH CRITICAL VENDOR PAYMENT PROCEDURES

Upon the motion (the "Motion")[1] of the Debtor for authority to establish Critical Vendor Payment Procedures pursuant to sections 1107(a) and 105(a) of the Bankruptcy Code; the Court having reviewed the Motion; the Court having determined that the relief requested in this Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; it appearing that notice of the Motion was good and sufficient under the particular circumstances

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

ATLANTA:5282375.2

and that no other or further notice need be given; upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED.

2. To the extent an entity asserts a Critical Vendor Claim, the payment of which the Debtor, upon advice of counsel, reasonably believes would be authorized under existing law, the Debtor may pay such Critical Vendor Claim. The Debtor shall file with the court, and provide to the Notice Parties an accounting of each such claim paid, including the bases on which payment of such claim is warranted. Upon motion of any party in interest filed within thirty (30) days of such accounting, the Debtor (and the creditor paid) shall be required to show cause why payment of such claim should be deemed by the Court to be properly authorized. If the Court determines that a payment was not properly authorized, the Debtor is authorized to, in its discretion and without further order of the Court, declare that provisional payments made to such Critical Vendor on account of its Critical Vendor Claim shall be deemed to have been in payment of then-outstanding postpetition claims of such vendor without further order of the Court or action by any person or entity.

3. To the extent an entity claims a lien against property of any of the Debtor's estate to secure a Critical Vendor Claim (which lien, upon advice of counsel, the Debtor reasonably believes to be valid) and to the extent payment of such Critical Vendor Claim is, in the exercise of the Debtor's business judgment, in the best interests of the estate, the Debtor is authorized to pay such Critical Vendor Claim, subject to the accounting and objection provisions in paragraph 2 above. The Debtor shall file with the Court and provide to the Notice Parties an accounting, itemized by claims paid, of any Critical Vendor Claims so paid.

2

4. Any entity provided with a copy of this Order shall be deemed on notice that a refusal to provide postpetition goods or services to the Debtor by reason of non-payment of any prepetition debt, and despite assurance, in the form of a deposit or prepayment, that such entity will suffer no loss through provision of postpetition goods or services, absent good cause, constitutes a willful violation of section 362(a)(6) of the Code.

5. As a prerequisite to payment of any Critical Vendor Claim, the Debtor will use reasonable efforts to require Critical Vendors to agree to transact with the Debtor postpetition on Customary Trade Terms for such duration of time as agreed to by the Debtor and the particular Critical Vendor, unless otherwise agreed to by the Debtor and the particular Critical Vendor.

6. If, after receipt of payment for any Critical Vendor Obligation, a Critical Vendor refuses to continue to provide products, supplies or services upon the Customary Trade Terms as agreed to with the Debtor, then the Debtor may (i) declare that any payment made to such Critical Vendor on account of its prepetition claim shall be deemed to have been in payment of then-outstanding postpetition claims of such Critical Vendor without further order of the Court or action by any person or entity; (ii) require that the Critical Vendor immediately repay to the Debtor any payments made to it on account of its prepetition claim, without the right of any setoff, claim, provision for payment of reclamation or trust fund claim, or otherwise; and (iii) seek redress with the Court for failure to comply with the Customary Trade Terms.

7. Nothing in this Order nor any action taken by the Debtor in furtherance of the implementation hereof shall be deemed an approval of the assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

3

8.    Nothing in this Order shall impair the ability of the Debtor or appropriate party in interest to contest any claim of any creditor pursuant to applicable law or otherwise dispute, contest, setoff, or recoup any claim, or assert any right, claim or defense related thereto.

9.    All applicable banks or financial institutions are authorized, consistent with the terms of any applicable cash management order entered in this Chapter 11 case, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay all checks drawn on or direct deposit and funds transfer instructions relating to the Debtor's accounts and any other transfers that are related to the Critical Vendor Claims and the costs and expenses incident thereto; provided, that sufficient funds are available in the accounts to make such payments; provided further, that (i) any such bank or financial institution may rely on the representations of the Debtor regarding which checks that were drawn or instructions that were issued by the Debtor before the Petition Date should be honored postpetition pursuant to this Order and (ii) any such bank or financial institution shall not have any liability to any party for relying on the representations of the Debtor as provided herein.

10.   Notice of the Motion as provided therein is good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

11.   The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

12.   The Debtor shall, within three (3) business days hereof, serve a copy of this Order on all parties that received notice of the Motion, as well as all parties that have appeared in this Chapter 11 case and requested notice since the Debtor filed the Motion, and file a certificate of service evidencing such service.

ATLANTA:5282375.2

13. Notwithstanding anything to the contrary in this Order, the relief herein is granted solely to the extent that it is consistent with the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(d), 363(e), 364(c), 364(d)(1), 364(e), and 507(b) and (B) Utilize Cash Collateral of Prepetition Secured Parties, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (IV) Granting Related Relief* (the "Interim Order") and the Final Order (as defined in the Interim Order) with respect thereto, as applicable, and solely to the extent any payment authorized by this Order is provided for in the Approved Budget (as defined in the Interim Order and the Final Order, as applicable).

- End of Document -

**Prepared and Presented by:**

MCKENNA LONG & ALDRIDGE LLP

s/ J. Michael Levengood
Gary W. Marsh
Georgia Bar No. 471290
J. Michael Levengood
Georgia Bar No. 447934
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
404-527-4000 (phone)
404-527-4198 (fax)
gmarsh@mckennalong.com
mlevengood@mckennalong.com

*Proposed Counsel for Southwest Georgia Ethanol, LLC, Debtor in Possession*

5