# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | |
|---|---|
| IN RE:<br><br>SOUTHWEST GEORGIA ETHANOL, LLC,<br><br><br><br>Debtor. | CHAPTER 11<br><br>Case No. _____ |

## APPLICATION FOR AUTHORITY TO EMPLOY MORGAN KEEGAN & COMPANY, INC. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE, PURSUANT TO BANKRUPTCY CODE SECTIONS 327 AND 328

COMES NOW Southwest Georgia Ethanol, LLC, as debtor and debtor-in-possession (the "Debtor"), and applies to this Court for authority to employ Morgan Keegan & Company, Inc. ("Morgan Keegan") as its investment banker and financial advisor pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, *nunc pro tunc* to the date the Debtor filed the above-styled Chapter 11 case. In support of this Application, the Debtor shows the Court as follows:

### Relief Requested

1.      By this Application, the Debtor respectfully requests the entry of an order, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor to employ Morgan Keegan as its investment banker and financial advisor on the terms set forth herein and in that certain engagement letter between the Debtor and Morgan Keegan dated January 13, 2011 (the "Engagement Letter"), a copy of which is annexed hereto as Exhibit A, and approving the proposed compensation of Morgan Keegan as set forth in the Engagement Letter. In support of

this Application, the Debtor submits the declaration of Michael G. Lederman, Managing Director and Head, Special Situations Group, at Morgan Keegan (the "Lederman Declaration"), a copy of which is annexed hereto as Exhibit B.

### Jurisdiction

2.    This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### Background

3.    On February 1, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.    The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    A description of the Debtor's businesses, the reason for filing this Chapter 11 case, and the relief sought from this Court to allow for a smooth transition into operations under Chapter 11 are set forth in the Declaration of Lawrence Kamp in Support of First Day Motions (the "Kamp Declaration"), which has been filed with the Court.

### Basis for Relief

6.    Morgan Keegan has been providing the Debtor with investment banking and restructuring advice prior to the Petition Date.  Pursuant to Section 327(a) of the Bankruptcy Code, the Debtor requests that the Court approve retention of Morgan Keegan as its investment banker and financial advisor to perform investment banking and advisory services that will be necessary during this Chapter 11 case.

7.    Under Sections 327 and 328 of the Bankruptcy Code, a trustee, a debtor-in-possession and committee appointed under Section 1102 of the Bankruptcy Code may employ

ATLANTA:5280340.2

one or more professionals that do not hold or represent an interest adverse to the estate and that

are disinterested persons to assist such parties in carrying out their duties under the Bankruptcy

Code.  Specifically, Section 328(a) of the Bankruptcy Code provides:

> The [Debtor], with the court's approval, may employ or authorize
> the employment of a professional person under section 327 or 1103
> of this title, as the case may be, on any reasonable terms and
> conditions of employment, including on retainer, on an hourly
> basis, on a fixed basis, on a fixed or percentage fee basis, or on a
> contingent fee basis.

11 U.S.C. § 328(a).

Bankruptcy Rule 2014 requires that a motion for retention include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> the [firm's] connections with the debtor, creditors, and any other
> party in interest, their respective attorneys and accountants, the
> United States Trustee, or any other person employed in the office
> of the United States Trustee.

Fed. R. Bankr. P. 2014.

8.     By this Application, pursuant to Section 328(a), the Debtor requests that the Court

approve the compensation arrangements described in the Morgan Keegan Engagement Letter.

Section 328(a) permits the compensation of professionals, including investment bankers, on

more flexible terms that reflect the nature of their services and market conditions, which is a

significant departure from prior bankruptcy practice relating to the compensation of

professionals.  As the United States Court of Appeals for the Fifth Circuit recognized in *In re

Nat'l Gypsum Co.*, 123 F3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for
> bankruptcy estates where their compensation would be subject to the
> uncertainties of what a judge thought the work was worth after it had been
> done.  That uncertainty continues under the present section 330 of the
> Bankruptcy Code, which provides that the court award to professional

ATLANTA:5280340.2

consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted); *see also Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 83 B.R. 869, 874 (S.D.N.Y. 2008).

9.    The Debtor has determined that it is in the best interests of the Debtor, its estate, and its creditors that the Debtor continues to retain Morgan Keegan under the arrangements set forth in the Engagement Letter, and believes that the terms of the employment and compensation of Morgan Keegan under the arrangements set forth in the Engagement Letter should be approved under Section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code specifically allows payment on "a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, the Debtor respectfully requests that this Court approve the Debtor's application to employ Morgan Keegan on a fixed percentage fee basis or on a contingent fee basis as described in the compensation structure set forth in the Engagement Letter.

10.    The Debtor has selected the firm of Morgan Keegan as its investment banker and financial advisor because Morgan Keegan is a leading independent investment banking firm with extensive experience in the reorganization and restructuring of troubled companies both in and out of court. Morgan Keegan has an excellent reputation for the services it has rendered to troubled companies throughout the United States. Moreover, Morgan Keegan has developed extensive knowledge of the Debtor's business and financial affairs, having worked closely with the Debtor's management and other professionals to become closely acquainted with the Debtor's operations, debt structure, creditors, businesses and related matters. The employment of Morgan Keegan is appropriate and necessary to enable the Debtor to execute faithfully its

ATLANTA:5280340.2

duties as debtor and debtor-in-possession and to implement the reorganization of the Debtor's financial affairs.

11.     Subject to further order of this Court, it is proposed that Morgan Keegan be employed for the following purposes, as set forth in the Engagement Letter:[1]

(a) Assisting in the evaluation of the Debtor's business, prospects, strategic alternatives and any Transaction proposed to the Debtor;

(b) Evaluating the Debtor's potential debt capacity and determining an appropriate capital structure;

(c) Structuring potential Transactions and assisting the Debtor in the determination of a range of values applicable to the Debtor in the context of any such Transaction;

(d) Evaluating and structuring potential alternative financing arrangements such as feed stock supply agreements;

(e) Identifying and screening potential financing sources, and assisting in arranging, negotiating and closing any Financing the Debtor chooses to pursue;

(f) Assisting the Debtor in developing presentations to holders of the Existing Obligations, potential sources of Financing or other third parties as required;

(g) Structuring and managing due diligence process(es) as needed, including establishing data rooms;

(h) If requested by the Debtor, advising and assisting the Debtor in evaluating and executing Divestiture(s) whether on an out-of-court basis or pursuant to Section 363 of the Bankruptcy Code or a plan of reorganization, including identifying and screening potential purchasers;

(i) Providing information and reports regarding the financial position of the Debtor to the Current Lenders and their advisors and responding to reasonable requests by the Current Lenders in connection with any proceedings under the Bankruptcy Code involving the Debtor;

(j) If requested by the Debtor, advising it from a financial point of view regarding whether to reorganize under Chapter 11 of the Bankruptcy Code, providing financial advice to the Debtor during the course of such proceedings, including providing

---

[1] All capitalized terms shall have the meaning ascribed in the Engagement Letter. To the extent there is any conflict between the terms set forth in this Application and the terms set forth in the Engagement Letter, the terms set forth in the Engagement Letter shall govern.

ATLANTA:5280340.2

witness testimony concerning any topic within the scope of Morgan Keegan's services hereunder, and assisting the Debtor and its other professionals in formulating and negotiating a plan of reorganization; and

(k) Providing such other financial advisory and investment banking services as may be mutually agreed upon by Morgan Keegan and the Debtor in connection with the foregoing.

12.    To the best of the Debtor's knowledge: (a) Morgan Keegan neither holds nor represents any interest adverse to the Debtor; (b) Morgan Keegan has had no connection with the Debtor, their creditors or any party in interest, or their respective attorneys and accountants, the United States Trustee, or any other person employed in the office of the United States Trustee, except as specifically disclosed more fully in the Lederman Declaration. The Debtor believes that Morgan Keegan is a "disinterested person" within the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code.

13.    As set forth above, pursuant to Section 328(a) of the Bankruptcy Code, the Debtor may retain Morgan Keegan on any reasonable terms and conditions. In consideration of the services to be provided by Morgan Keegan, as set forth in the Engagement Letter, the Debtor and Morgan Keegan have agreed that Morgan Keegan will be compensated based on the following material terms (in addition to any and all other terms set forth in the Engagement Letter): [2]

a) A one-time engagement fee (the "Engagement Fee") of $100,000 payable upon execution of the Agreement.

b) A monthly fee (the "Monthly Fee") of $40,000 payable monthly on the 1st day of each month commencing in March 2011. Should the Debtor enter Chapter 11 proceedings, the Monthly Fee shall be increased to $50,000 per month. The Monthly Fee in Chapter 11 shall be payable in advance on the first day of each month, with any partial months pro-rated based on services commencing as of the date of the Chapter 11 petition. Except for the first three Monthly Fees paid in

---

[2] All capitalized terms shall have the meaning ascribed in the Engagement Letter. To the extent there is any conflict between the terms set forth in this Application and the terms set forth in the Engagement Letter, the terms set forth in the Engagement Letter shall govern.

ATLANTA:5280340.2

Chapter 11, such Monthly Fees shall be credited against any Financing Fee, Restructuring Fee (such credit to be applied first against the $1,500,000 cash portion of the Restructuring Fee due upon the closing of a Restructuring) or Divestiture Fee earned by Morgan Keegan.

c) A financing fee or fees (each a "Financing Fee") shall be earned by Morgan Keegan and paid at the closing of each such Financing as follows:

    (i)      the greater of 1.50% of the principal amount of new financing for senior secured term debt that is accepted by the Debtor or $300,000;

    (ii)      the greater of 3.0% of the principal amount of any new financing for any junior debt that is accepted by the Debtor or $300,000;

    (iii)      the greater of 3% of the amount of any equity investment or equity-linked investment from pre-existing equity investors that is accepted by the Debtor or $500,000; and

    (iv)      the greater of 6.0% of the amount of any new equity investment or equity-linked investment that is accepted by the Debtor or $500,000.

d) A restructuring fee (the "Restructuring Fee") in an amount equal to $1,750,000. Such Restructuring Fee is contingent upon the consummation of a Restructuring and shall be payable as follows: (i) $1,500,000 upon the closing thereof and (ii) $250,000 to be paid in twelve (12) equal monthly installments (with no interest or penalties) commencing upon the month after the closing, the payment of which will be deferred if the Debtor is in default under any material indebtedness for borrowed money then outstanding until such default is cured.

e) A divestiture fee (a "Divestiture Fee") equal to the greater of 1.75% of the Transaction Consideration paid in a Divestiture or $500,000; *provided, however,* that in the case of any Divestiture with a Current Lender (including a credit bid pursuant to a Section 363 sale or otherwise) or an entity owned or controlled by one or more Current Lenders, the Divestiture Fee shall be $750,000. Such Divestiture Fee is contingent upon the consummation of a Divestiture and shall be payable upon the closing thereof.

14.      In addition to the compensation described above, the Debtor has agreed to reimburse Morgan Keegan for all of its professionals' reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter. Reasonable

ATLANTA:5280340.2

expenses shall include, but shall not be limited to, expenses incurred in connection with travel and lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Morgan Keegan's counsel, and other necessary expenditures, as more fully set forth in the Engagement Letter.

15.    The hours worked, the results achieved, and the ultimate benefit to the Debtor by the work performed by Morgan Keegan in connection with its engagement may vary, and Morgan Keegan and the Debtor have specifically taken this into account in setting Morgan Keegan's compensation. The compensation structure described above was established to reflect the difficulty of the extensive assignments Morgan Keegan expects to undertake and the challenging nature of this engagement. Further, the compensation structure described above is consistent with Morgan Keegan's normal and customary billing practices for cases of this size and complexity. Accordingly, Morgan Keegan and the Debtor believe that Morgan Keegan's proposed compensation is both reasonable and market-based.

16.    The compensation arrangement reflected in the Engagement Letter is consistent with, and typical of, arrangements entered into by Morgan Keegan and other investment banking and advisory firms with respect to rendering similar services for clients such as the Debtor. The Debtor believes that the Morgan Keegan compensation structure described herein constitutes fair and reasonable terms and conditions for the retention by the Debtor of Morgan Keegan.

17.    Morgan Keegan will apply to this Court for approval of compensation for its professional services rendered and reimbursement of expenses incurred in connection with this Chapter 11 case; *provided, however,* that the Debtors submit that any such application of Morgan Keegan shall be subject to review *solely* pursuant to the standard of review set forth in Section

8

328(a) of the Bankruptcy Code, and any and all standards under Section 330 of the Bankruptcy Code *shall not apply*.

18.    It is not the general practice of investment banking firms, including Morgan Keegan, to keep detailed time records similar to those customarily kept by attorneys. Pursuant to the terms of the Engagement Agreement, and consistent with the nature of Morgan Keegan's employment pursuant to Section 328(a) of the Bankruptcy Code, Morgan Keegan and its professionals will not maintain contemporaneous time records.

19.    The Debtor acknowledges and agrees that Morgan Keegan's strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of Morgan Keegan's engagement hereunder, were important factors in determining Morgan Keegan's compensation structure, and the ultimate benefit to the Debtor of Morgan Keegan's services hereunder could not, cannot, and cannot in the future be measured by reference to the number of hours to be expended by Morgan Keegan and its professionals in the performance of Morgan Keegan's services.

20.    The Debtor also acknowledges that the compensation structure set forth herein has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Morgan Keegan and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Morgan Keegan and (ii) the actual time and commitment required of Morgan Keegan and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Morgan Keegan.

ATLANTA:5280340.2

21.    The Debtor have agreed to indemnify Morgan Keegan pursuant to certain provisions set forth in the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions are customary for financial advisors and investment bankers such as Morgan Keegan for proceedings both out of court and in Chapter 11 cases. The Indemnification Provisions were fully negotiated between the Debtor and Morgan Keegan at arms-length, and the Debtor believes that the Indemnification Provisions, viewed in conjunction with the other terms of Morgan Keegan's retention, are reasonable and in the best interests of the Debtor, its estate and its creditors.

### Notice

22.    No trustee, examiner, or creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion will be given to: (a) the Office of the United States Trustee; (b) Jennifer C. Hagle, Esq., counsel to WestLB, agent for the Debtor's prepetition secured lenders and proposed postpetition debtor-in-possession lenders; and (c) all parties included on the Debtor's list of twenty (20) largest unsecured creditors. The Debtor submits that, under the circumstances, no other or further notice is required.

23.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as Exhibit C, granting the relief requested herein, and such other and further relief as the Court deems just and proper.

*[signature follows]*

ATLANTA:5280340.2

This 1st day of February, 2011.

Name:   Lawrence Kamp
Title:   Chief Financial Officer to the Debtor

and

MCKENNA LONG & ALDRIDGE LLP

s/ J. Michael Levengood
Gary W. Marsh
Georgia Bar No. 471290
J. Michael Levengood
Georgia Bar No. 447934
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
404-527-4000 (phone)
404-527-4198 (fax)
gmarsh@mckennalong.com
mlevengood@mckennalong.com

*Proposed Counsel for Southwest Georgia
Ethanol, LLC, Debtor in Possession*

11

## **Exhibit A**

Engagement Letter

# Morgan Keegan

MEMBERS NEW YORK STOCK EXCHANGE

Morgan Keegan & Company, Inc.
471 Hope Street
Bristol, Rhode Island 02809
401-396-9777

**Michael G. Lederman**
*Managing Director and Head,*
*Special Situations Group*

January 13, 2011

Southwest Georgia Ethanol, LLC
Attn: Larry Kamp
Chief Financial Officer
PO Box 386
Camilla, Georgia 31730

Gentlemen:

This letter (the "Agreement") confirms the engagement of Morgan Keegan & Company, Inc. ("Morgan Keegan") as the exclusive investment bankers and financial advisors to Southwest Georgia Ethanol, LLC ("SWG" or the "Company") with regard to the matters and services set forth herein.

Under this Agreement, Morgan Keegan will provide investment banking and strategic financial advisory services to the Company in connection with any Restructuring, Financing(s), and, if requested by the Company, any Divestiture (each a "Transaction"). These terms for purposes of this Agreement have the following meanings:

Restructuring:  means any restructuring, reorganization, recapitalization or any other transaction resulting in a material modification of the terms and/or conditions, and/or other resolution, reinstatement or agreement, with respect to all or substantially all of SWG's outstanding indebtedness (including, without limitation, any bonds, bank debt, subordinated debt and any off-balance sheet indebtedness), trade claims, leases, litigation-related claims and obligations, preferred equity or other liabilities (collectively, the "Existing Obligations"), whether consummated out-of-court or pursuant to proceedings under Chapter 11 of the Bankruptcy Code.

Financing:  means any transaction or series of related transactions involving the issuance, sale or placement of new debt or securities (debt and/or equity) by SWG in connection with which the senior secured bank debt (including any debtor-in-possession financing) of SWG is indefeasibly paid in full, excluding, in each case, any debt (including any debtor-in-possession financing and Chapter 11 exit financing) provided to SWG by a person who is a lender to SWG on the

NY1 7517933v.3

date hereof (together with its affiliates, successors and assignees (a "Current Lender")) or equity in SWG taken by a Current Lender.

Divestiture:    means any transaction or series of related transactions, each between the Company and a different party whereby, directly or indirectly, an ownership interest in all or substantially all of the Company, its business or its assets is transferred for consideration, including, without limitation, one or more transactions involving a sale or exchange of capital stock or assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, spin-off, leveraged buy-out, the formation of a joint venture or partnership or any other business combination or similar transaction, whether consummated out-of-court or pursuant to proceedings under Chapter 11 of the Bankruptcy Code.

The investment banking and strategic financial advisory services rendered by Morgan Keegan may include the following:

(a) Assisting in the evaluation of the Company's business, prospects, strategic alternatives and any Transaction proposed to the Company;

(b) Evaluating the Company's potential debt capacity and determining an appropriate capital structure;

(c) Structuring potential Transactions and assisting the Company in the determination of a range of values applicable to the Company in the context of any such Transaction;

(d) Evaluating and structuring potential alternative financing arrangements such as feedstock supply agreements;

(e) Identifying and screening potential financing sources, and assisting in arranging, negotiating and closing any Financing the Company chooses to pursue;

(f) Assisting the Company in developing presentations to holders of the Existing Obligations, potential sources of Financing or other third parties as required;

(g) Structuring and managing due diligence process(es) as needed, including establishing data rooms;

(h) If requested by the Company, advising and assisting the Company in evaluating and executing Divestiture(s) whether on an out-of-court basis or pursuant to Section 363 of the Bankruptcy Code or a plan of reorganization, including identifying and screening potential purchasers;

(i) Providing information and reports regarding the financial position of the Company to the Current Lenders and their advisors and responding to reasonable requests by the Current Lenders in connection with any proceedings under the Bankruptcy Code involving the Company;

(j) If requested by the Company, advising it from a financial point of view regarding whether to reorganize under Chapter 11 of the Bankruptcy Code, providing financial advice to the Company during the course of such proceedings, including providing witness testimony concerning any topic within the scope of Morgan Keegan's services hereunder, and assisting the Company and its other professionals in formulating and negotiating a plan of reorganization; and

(k) Providing such other financial advisory and investment banking services as may be mutually agreed upon by Morgan Keegan and the Company in connection with the foregoing.

Notwithstanding anything contained in this Agreement to the contrary, Morgan Keegan's retention under this Agreement is solely to provide investment banking and strategic financial advice and Morgan Keegan is not being retained to provide Chief Restructuring Officer or "crisis management" services. Morgan Keegan shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity, and hence makes no representations or warranties concerning the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully consummate a Transaction. In rendering services to the Company hereunder, Morgan Keegan is not assuming any responsibility to effect or not effect any Transaction contemplated hereunder. Further, it is understood that neither Morgan Keegan nor any of its employees are undertaking to provide any legal, accounting or tax advice in connection with its engagement hereunder, and the Company shall rely on its own experts for such advice.

As compensation for the services rendered hereunder, the Company, and its successors, if any, agrees to pay Morgan Keegan in cash (via wire transfer) (except as set forth in (d) below) the following fees:

a) A one-time engagement fee (the "Engagement Fee") of $100,000 payable upon execution of this Agreement.

b) A monthly fee (the "Monthly Fee") of $40,000 payable monthly on the 1st day of each month commencing in March 2011. Should the Company enter Chapter 11 proceedings, the Monthly Fee shall be increased to $50,000 per month. The Monthly Fee in Chapter 11 shall be payable in advance on the first day of each month, with any partial months pro-rated based on services commencing as of the date of the Chapter 11 petition. Except for the first three Monthly Fees paid in Chapter 11, such Monthly Fees shall be credited against any Financing Fee, Restructuring Fee (such credit to be applied first against the $1,500,000 cash portion of the Restructuring Fee due upon the closing of a Restructuring) or Divestiture Fee earned by Morgan Keegan.

c) A financing fee or fees (each a "Financing Fee") shall be earned by Morgan Keegan and paid at the closing of each such Financing as follows:

    (i)    the greater of 1.50% of the principal amount of new financing for senior secured term debt that is accepted by the Company or $300,000;

    (ii)    the greater of 3.0% of the principal amount of any new financing for any junior debt that is accepted by the Company or $300,000;

    (iii)    the greater of 3% of the amount of any equity investment or equity-linked investment from pre-existing equity investors that is accepted by the Company or $500,000; and

    (iv)    the greater of 6.0% of the amount of any new equity investment or equity-linked investment that is accepted by the Company or $500,000.

d) A restructuring fee (the "Restructuring Fee") in an amount equal to $1,750,000. Such Restructuring Fee is contingent upon the consummation of a Restructuring and shall be payable as follows: (i) $1,500,000 upon the closing thereof and (ii) $250,000 to be paid in twelve (12) equal monthly installments (with no interest or penalties) commencing upon the month after the closing, the payment of which will be deferred if the Company is in default under any material indebtedness for borrowed money then outstanding until any such default is cured.

e) A divestiture fee (a "Divestiture Fee") equal to the greater of 1.75% of the Transaction Consideration (as defined below) paid in a Divestiture or $500,000; provided, however, that in the case of any Divestiture with a Current Lender (including a credit bid pursuant to a Section 363 sale or otherwise) or an entity owned or controlled by one or more Current Lenders, the Divestiture Fee shall be $750,000. Such Divestiture Fee is contingent upon the consummation of a Divestiture and shall be payable upon the closing thereof.

The "Transaction Consideration" for purposes of calculating a Divestiture Fee shall mean the total amount of all cash, securities and other properties received or receivable directly or indirectly in connection with a Divestiture (including, without limitation, amounts paid or received (i) pursuant to covenants not to compete, employment contracts, management fees or other similar arrangements, and (ii) to holder(s) of any warrants, stock purchase rights or convertible securities and to holders of any options or stock appreciation rights, whether or not vested). Transaction Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings ) existing on the Company's balance sheet at the time of each Divestiture (if such Divestiture takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with such Divestiture (if such Divestiture takes the form of a sale of assets). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of the applicable Divestiture. The value of securities, lease payments, earn-outs, contingent payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by mutual agreement of Morgan Keegan and the Company; provided, however, that all debt securities, except zero coupon or deep discount securities, shall be valued at their stated principal amount without applying a discount thereto.

Only one of the Financing Fee, the Restructuring Fee and the Divestiture Fee may be payable hereunder.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Morgan Keegan at the request of the Company including issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Morgan Keegan and the Company.

In addition to the foregoing compensation, the Company shall, as promptly as practicable, reimburse Morgan Keegan for its reasonable out-of-pocket expenses incurred in connection with the engagement hereunder, including, but not limited to, travel and lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Morgan Keegan's counsel (such counsel not to be retained, and such fees and expenses not to exceed $10,000 without prior approval from the Company, which approval shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. In connection therewith, upon execution of this Agreement the Company shall pay Morgan Keegan and maintain thereafter a $10,000 expense advance for which Morgan Keegan shall account upon termination of this Agreement.

Should the Company enter Chapter 11 proceedings, it shall use its best efforts to promptly apply to the Bankruptcy Court for the approval, pursuant to Sections 327 and 328 of the Bankruptcy Code, of (A) this Agreement, including the indemnification provisions attached hereto as Appendix I, and (B) Morgan Keegan's retention by the Company under the terms of this Agreement and subject to the standard of review provided in Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under Section 330 of the Bankruptcy Code. The Company shall provide Morgan Keegan with a draft of such application and any proposed order authorizing Morgan Keegan's retention sufficiently in advance of the filing of such application and proposed order to enable Morgan Keegan and its counsel, if any, to review and comment thereon. Please understand that Morgan Keegan shall have no obligation to provide any services under this Agreement unless Morgan Keegan's retention under the terms of this Agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Morgan Keegan in all respects. Morgan Keegan acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Morgan Keegan's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, Morgan Keegan shall not be required to maintain time records nor maintain receipts for expenses in amounts less than $20 except as required by an applicable bankruptcy court order.

With respect to Morgan Keegan's retention under Sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Morgan Keegan's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during Morgan Keegan's engagement hereunder, will inure to the benefit of the Company and were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Morgan Keegan's services hereunder could not be measured merely by reference to the number of hours to be expended by Morgan Keegan's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Morgan Keegan and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Morgan Keegan and that the actual time and commitment required of Morgan Keegan and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Morgan Keegan may be required to address in the performance of its services hereunder, Morgan Keegan's commitment to the variable level of time and

effort necessary to address all such issues as they arise, and the market prices for Morgan Keegan's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Engagement Fee, Monthly Fee, Restructuring Fee, Financing Fee, and Divestiture Fee) are reasonable under the standards set forth in Section 328(a) of the Bankruptcy Code.

The Company will furnish Morgan Keegan such information as Morgan Keegan believes appropriate to its assignment (all such information so furnished being the "Information") and Morgan Keegan will keep such Information confidential and distribute such Information (and materials derived from such Information) only upon the prior consent or instruction of the Company. The Company recognizes and confirms that Morgan Keegan (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its engagement. The Company confirms that the Information to be furnished by the Company, when delivered, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify Morgan Keegan if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Morgan Keegan or any other party in interest.

Except as required by applicable law, any advice to be provided by Morgan Keegan under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors) without the prior written consent of Morgan Keegan. All services, advice and information and reports provided by Morgan Keegan to the Company in connection with this engagement shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Morgan Keegan will provide its investment banking and strategic financial advice exclusively to the Company through the senior management and board of directors of the Company, and not to the Company's shareholders or any committee of shareholders or to any equity, creditor or other constituencies. Senior management and the board of directors will make all strategic decisions for the Company, including the terms and conditions of any contemplated Transaction and the process through which it would be effected. In so doing, senior management and the board of directors will obtain the advice of the Company's legal, tax and other advisors and consider such other factors as they consider appropriate before exercising their independent business judgment in respect of any strategic decision or transaction. The Company further acknowledges and agrees that Morgan Keegan has been retained to act solely as the Company's investment banker and strategic financial advisor and does not in such capacity act as a fiduciary for the Company or any other person. Morgan Keegan shall act as an independent contractor and any duties of Morgan Keegan arising from its engagement hereunder shall be owed solely to the Company. Morgan Keegan representatives shall be deemed part of the Company's senior management advisory team with respect to all privileged communications between or among any of Morgan Keegan, Company's counsel and members of the senior management or any of the directors of the Company in connection with legal advice or services provided by such counsel to Company in which

Morgan Keegan's advice or efforts are of value or a necessary part of the legal analysis, advice or work product of such legal counsel on behalf of the Company.

In the event that, as a result of or in connection with Morgan Keegan's engagement for the Company, for reasons other than breach of this Agreement or gross negligence, bad faith or misconduct by Morgan Keegan, Morgan Keegan becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will, so long as Morgan Keegan is not a party to the proceeding in which the information is sought, reimburse Morgan Keegan for the reasonable fees and expenses of its counsel incurred in responding to such a request. If, subsequent to the termination of Morgan Keegan's engagement hereunder, Morgan Keegan is called upon as a non-party to the subject proceedings to produce documents, answer interrogatories, give depositions, give expert or other testimony, whether by subpoena, court process or order, or otherwise, for reasons other than breach of this Agreement or gross negligence, bad faith or misconduct by Morgan Keegan, the Company shall pay Morgan Keegan's then prevailing hourly rates of the persons involved in rendering such services, including, but not limited to the time expended in meetings, conferences, preparation and travel and all related reasonable out-of-pocket expenses, and the reasonable legal fees and expenses of Morgan Keegan's legal counsel incurred in connection therewith. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification provisions attached hereto as Appendix I.

This Agreement may be terminated by either party hereto at any time, with or without cause, by providing 30- days' written notice. Notwithstanding the foregoing, (a) the provisions relating to (i) the payment of fees and expenses accrued through the date of termination (unless this Agreement is terminated (x) by the Company for cause or (y) by Morgan Keegan without cause, in which case such fees and expenses will be payable only through the date of the notice of termination) and (ii) the payment of post-termination fees and expenses described below and in the paragraph immediately above, (iii) the status of Morgan Keegan as an independent contractor and (iv) the limitation as to whom Morgan Keegan shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations to indemnify Morgan Keegan as described herein and in Appendix I, and (c) unless this Agreement is terminated for cause, Morgan Keegan shall be entitled to the Restructuring Fee, Financing Fee(s), and/or Divestiture Fee(s) in the event that, respectively, a Restructuring, Financing or a Divestiture is consummated at any time prior to the expiration of 12 months following the termination of this Agreement. Cause as it relates to the termination of this Agreement means termination of this Agreement by either party as a result of the other party's gross negligence, willful misconduct, bad faith or material breach of its obligations hereunder.

This Agreement (including the indemnification provisions set forth in Appendix I) embodies the entire agreement and understanding between the parties hereto and, unless expressly stated otherwise herein, supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, and it will otherwise remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that state. The Company acknowledges that Morgan Keegan shall have the

NY1 7517933v.3

right upon engagement and after completion of a Restructuring, Financing or Divesture to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.  Morgan Keegan shall submit such advertisements in advance to the Company for its approval, which shall not be withheld unreasonably, relative to the content of such advertisements.

We look forward to working with you on this most important matter. Please confirm that the foregoing correctly sets forth our agreement by signing and returning to me the duplicate copy of this Agreement.

Very truly yours,

**MORGAN KEEGAN & COMPANY, INC.**

By: _____

Michael G. Lederman
Managing Director

Accepted and Agreed:

**SOUTHWEST GEORGIA ETHANOL, LLC**

By: _____
Name: Larry Kamp
Title:  Chief Financial Officer

# Appendix I

## Indemnity Provisions

If, in connection with the services or matters that are the subject of this Agreement, Morgan Keegan or any controlling person, affiliate, director, officer, employee or agent of Morgan Keegan (Morgan Keegan and each such other person referred to as an "Indemnified Person") becomes involved in any capacity in any lawsuit, claim or other proceeding, for which indemnity may be sought pursuant to these provisions, the Company shall immediately reimburse such Indemnified Person for any and all legal or other expenses reasonably incurred by such Indemnified Person in connection with investigating, preparing to defend or defending such lawsuit, claim or other proceeding. The Company also agrees to indemnify each Indemnified Person from, and hold it harmless against, any and all losses, claims, damages, liabilities or expenses to which such Indemnified Person may become subject arising in any manner out of or in connection with the services or matters which are the subject of this Agreement; provided, however, that the Company shall not be liable hereunder in respect of any loss, claim, damage, liability or expense to the extent that it is finally judicially determined by a court of competent jurisdiction that such loss, claim, damage or liability resulted directly from the gross negligence or willful misconduct of any Indemnified Person.

The Company agrees that the indemnification and reimbursement commitments set forth herein: (i) shall apply whether or not any Indemnified Person is a formal party to any such lawsuit, claim or other proceeding and (ii) are in addition to any liability that the Company may otherwise have to any Indemnified Person. The Company agrees that, unless a final judicial determination is made to the effect specified in the proviso to the last sentence in the preceding paragraph, any settlement of a lawsuit, claim or other proceeding against the Company arising out of the transactions contemplated by this Agreement which is entered into by the Company shall include a release from the party bringing such lawsuit, claim or other proceeding of each Indemnified Person, which release shall be reasonably satisfactory to Morgan Keegan. The Company further agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company in connection with Morgan Keegan's engagement hereunder, except for such losses, claims, damages or liabilities incurred by the Company that are finally judicially determined by a court of competent jurisdiction to have resulted directly from the gross negligence or willful misconduct of such Indemnified Person.

The Company and Morgan Keegan agree that if such indemnification or reimbursement sought pursuant to these indemnification provisions is finally judicially determined by a court of competent jurisdiction to be unavailable, then, whether or not Morgan Keegan is the Indemnified Person, the Company and Morgan Keegan shall contribute to the losses, claims, damages, liabilities and expenses for which such indemnification or reimbursement is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Morgan Keegan on the other, in connection with the transactions to which such indemnification or reimbursement relates, or (ii) if the allocation  provided by clause (i) above is not permitted by applicable law, in such proportion as appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative faults of the Company, on the one hand, and Morgan Keegan on the other, as well as any other equitable considerations; provided, however, that in no event shall the amount to be so contributed by Morgan Keegan exceed the amount of the cash fees actually received by Morgan Keegan hereunder.

NY1 7517933v.3

## Exhibit B

Declaration of Michael G. Lederman

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

IN RE:                                                CHAPTER 11

SOUTHWEST GEORGIA ETHANOL, LLC,                       Case No. _____

                    Debtor.

---

**DECLARATION OF MICHAEL G. LEDERMAN IN SUPPORT OF APPLICATION**
**FOR AUTHORITY TO EMPLOY MORGAN KEEGAN & COMPANY, INC. AS**
**INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTOR,**
***NUNC PRO TUNC* TO THE PETITION DATE, PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 327 AND 328**

I, Michael G. Lederman, hereby state and declare as follows:

1.      I am over the age of 18 and competent to testify.  I am a Managing Director and

the Head of the Special Situations Group of Morgan Keegan & Company, Inc. ("Morgan

Keegan"), an investment banking and advisory firm that maintains an office at 471 Hope Street,

Bristol, Rhode Island 02809.

2.      I am duly authorized to make this Declaration on behalf of Morgan Keegan, and I

make this Declaration in support of the application of the debtor-in-possession in the above-

styled Chapter 11 case (the "Debtor") for the approval of its continued engagement of Morgan

Keegan to provide investment banking and advisory services (the "Application").  The facts set

forth in this Declaration are personally known to me, and, if called as a witness, I could and

would testify thereto.  Unless otherwise defined, all capitalized terms used herein have the

meanings given to them in the Application.

3.      Morgan Keegan is a leading independent investment banking firm with extensive experience in the reorganization and restructuring of troubled companies both in and out of court.   Morgan Keegan has developed extensive knowledge of the Debtor's business and financial affairs, having worked closely with the Debtor's management and other professionals to become closely acquainted with the Debtor's operations, debt structure, creditors, businesses and related matters.

4.      The compensation arrangement reflected in the engagement letter between the Debtor and Morgan Keegan dated January 13, 2011 (the "Engagement Letter"), attached as Exhibit A to the Application, is consistent with, and typical of, arrangements entered into by Morgan Keegan and other investment banking and advisory firms with respect to rendering similar services for clients such as the Debtor, and reflects the difficulty of the extensive assignments Morgan Keegan expects to undertake and the challenging nature of this engagement.   Accordingly, Morgan Keegan believes that its proposed compensation is both reasonable and market-based.

5.      Neither I, Morgan Keegan, nor any professional associated with Morgan Keegan has been engaged by any entity other than the Debtor in connection with the Debtor's Chapter 11 case.

6.      Morgan Keegan is not a creditor of the Debtor.   Within the 90-day period prior to the Debtor's commencement of the above-styled Chapter 11 case, the Debtor paid Morgan Keegan $100,000.00 pursuant to the terms of the Engagement Letter.

7.      In connection with Morgan Keegan's proposed employment and retention by the Debtor, Morgan Keegan undertook a conflicts analysis to determine whether it had any conflicts or other relationships that might cause it to represent or hold any interest adverse to the Debtor or

ATLANTA:5280340.2

its estate.  To the best of my knowledge, information, and belief formed after reasonable inquiry,

except as set forth herein, other than in connection with this case, neither I nor Morgan Keegan

has any connection with the Debtor, its creditors, the United States Trustee, or any other party

with an actual or potential interest in this Chapter 11 case, or their respective attorneys or

accountants, except that (a) Morgan Keegan may have been engaged from time to time in the

past, and may be engaged in the future, in other cases where one or more of such parties may

have been or may be involved, and (b) Morgan Keegan may have been engaged by certain

creditors and other parties in interest or their attorneys, accountants, or professionals in other

cases unrelated to the Debtor's Chapter 11 case.  To the best of my knowledge, information and

belief formed after reasonable inquiry, none of these engagements are adverse to the Debtor's

interests.  On information and belief, Morgan Keegan notes that the Debtor has a subordinated

debt financing arrangement pursuant to which the Mitchell County Development Authority

issued $10,000,000 of revenue bonds that were placed with Wachovia Bank.  The Debtor signed

a promissory note, collateralized by the Debtor's assets (subordinated to the Debtor's principal

secured lenders), and the proceeds were placed in a bond trustee account with Regions Bank,

with Regions Bank serving as the bond trustee.  Regions Bank is the parent company of Morgan

Keegan.  The funds held in the bond trustee account are classified as non-current restricted cash

and cash equivalents on the Debtor's consolidated balance sheet.  The Debtor is required to

maintain a debt service reserve in the account, and due to the subordination of the debt, the

Debtor is prohibited from making any debt service payments.  Regions Bank, as bond trustee,

has made payments to the bondholders from the debt service reserve.  Morgan Keegan

respectfully submits that its parent company's service in a representative capacity as the bond

ATLANTA:5280340.2

trustee of certain of the Debtor's subordinated debt does not represent an adverse interest to the Debtor or create a conflict of interest for Morgan Keegan.

8.      Morgan Keegan is an investment banking and advisory firm operating specifically in the areas of restructuring and distressed debt. As a result, Morgan Keegan has and may in the future represent certain interested parties herein in matters unrelated to this Chapter 11 case. We have completed a database search based on information relating to any interested parties, which search did not reveal any current or former relationships with parties that have a connection to the Debtor.

9.      Morgan Keegan is a large investment banking firm, and has likely provided services unrelated to the Debtor for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtor, and who may be creditors of the Debtor. Morgan Keegan is a dealer in the farm credit note system, and in that capacity may have provided services in some connection with the Debtor's commercial paper, but not in any capacity adverse to the Debtor. To the best of my knowledge, information and belief, Morgan Keegan's services were and are wholly unrelated to the Debtor, its estate and this Chapter 11 case.

10.     As part of its practice as a large investment banking firm, Morgan Keegan appears in numerous cases, proceedings and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Debtor's Chapter 11 case. Morgan Keegan has worked in the past, and likely will work in the future, with or against professionals involved in the Debtor's Chapter 11 case in other matters unrelated to the Debtor's Chapter 11 case. Based on my current knowledge of the professionals involved in this case, and to the best

ATLANTA:5280340.2

of my knowledge, information and belief, none of these relationships represents an interest materially adverse to the Debtor in matters upon which Morgan Keegan is to be engaged.

11.     Morgan Keegan will continue to use reasonable efforts to identify any relevant facts or relationships that exist or arise that require disclosure, and if Morgan Keegan discovers any such relevant facts or relationships, Morgan Keegan will promptly file a supplemental disclosure with the Court.

12.     I am not related or connected to, and to the best of my knowledge, no other Morgan Keegan professional who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Middle District of Georgia, any of the District Court Judges for the Middle District of Georgia, or any employee in the Office of the United States Trustee for Region 21.

13.     Accordingly, except as set forth herein, Morgan Keegan submits that it holds no interest adverse to the Debtor as to the matters for which it has been employed by the Debtor, and Morgan Keegan is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), as modified by Section 1107(b) of the Bankruptcy Code, in that Morgan Keegan and its professionals and employees:

   a.   are not creditors (including by reason of any unpaid fees and expenses for prepetition services), equity security holders or insiders of the Debtor;

   b.   are not and were not, within two (2) years before the date of the filing of the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor; and

   c.   do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

ATLANTA:5280340.2

14.     Morgan Keegan reserves the right to supplement this Declaration in the event that
Morgan Keegan discovers any facts bearing on matters described in this Declaration regarding
Morgan Keegan's employment by the Debtor.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true
and correct.

This 1st day of February, 2011.

_____
Michael G. Lederman

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or
imprisonment for up to 5 years or both.  18 U.S.C. §§  152 and 3571.

ATLANTA:5280340.2

## **Exhibit C**

Proposed Order

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| SOUTHWEST GEORGIA ETHANOL, LLC, | Case No. _____ |
| Debtor. | |

## ORDER APPROVING EMPLOYMENT OF MORGAN KEEGAN & COMPANY, INC. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE, PURSUANT TO BANKRUPTCY CODE SECTIONS 327 AND 328

This matter is before the Court on the application (the "Application")[1] of Southwest

Georgia Ethanol, LLC, debtor in the above-styled Chapter 11 case, as debtor and debtor-in-

possession (the "Debtor") for approval, pursuant to Sections 327(a) and 328(a) of the Bankruptcy

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, of (i) the employment of Morgan Keegan & Company, Inc. ("Morgan Keegan") as investment banker and financial advisor to the Debtor, *nunc pro tunc* to the date the Debtor filed the above-styled Chapter 11 case, on the terms set forth in the Application and in that certain engagement letter between the Debtor and Morgan Keegan dated January 13, 2011 (the "Engagement Letter"), attached as Exhibit A to the Application, and (ii) the compensation of Morgan Keegan on the terms set forth in the Application and the Engagement Letter.

The Court having held a hearing to consider the requested relief, upon the record of such hearing and all of the proceedings before this Court, no further notice or opportunity to be heard being necessary, the Court finds and determines that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409; (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (d) notice of the Application was sufficient; (e) the legal and factual basis set forth in the Application and the Lederman Declaration establish just cause for the relief granted herein; (f) Morgan Keegan does not hold or represent any interest adverse to the Debtor's estate; (g) Morgan Keegan is a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code and as required by Section 327(a) of the Bankruptcy Code; (h) the terms and conditions of Morgan Keegan's employment, including the compensation structure set forth in the Engagement Letter, are reasonable as required by Section 328(a) of the Bankruptcy Code; and (i) the requested relief is in the best interests of the Debtor, the Debtor's estate, creditors and all parties in interest; accordingly, **IT IS HEREBY ORDERED:**

1.    The Application is GRANTED in its entirety *nunc pro tunc* to the date the Debtor filed the above-styled Chapter 11 case (the "Petition Date").

2

2.      Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtor is authorized to (i) employ Morgan Keegan as its financial advisor and investment banker on the terms set forth in the Application and the Engagement Letter, *nunc pro tunc* to the Petition Date, and (ii) compensate Morgan Keegan on the terms set forth in the Application and the Engagement Letter.   To the extent there is any conflict between the terms set forth in the Application and the terms set forth in the Engagement Letter, the terms set forth in the Engagement Letter shall govern.

3.      The Debtor shall reimburse Morgan Keegan for all of its professionals' reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, pursuant to the terms of the Engagement Letter.   Reasonable expenses shall include, but shall not be limited to, expenses incurred in connection with travel and lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Morgan Keegan's counsel, and other necessary expenditures, as more fully set forth in the Engagement Letter.

4.      The Debtor shall indemnify Morgan Keegan pursuant to the terms of the Engagement Letter.

5.      Morgan Keegan shall apply to this Court for compensation for its professional services rendered and reimbursement of expenses incurred in connection with this Chapter 11 case; *provided, however*, that any such application of Morgan Keegan shall be subject to review *solely* pursuant to the standard of review set forth in Section 328(a) of the Bankruptcy Code, and any and all standards under Section 330 of the Bankruptcy Code *shall not apply*.

ATLANTA:5280340.2

6.     Morgan Keegan shall not be required to maintain contemporaneous time records, consistent with the nature of Morgan Keegan's employment pursuant to Section 328(a) of the Bankruptcy Code.

7.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to the Order.

8.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Rules 6004(g), 7062 and/or 9014 of the Federal Rules of Bankruptcy Procedure.

9.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in this Chapter 11 case, or upon any Chapter 7 trustee appointed in the event of a subsequent conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

10.    To the extent that this Order is inconsistent with any prior Order or pleading in this Chapter 11 case, the terms and conditions of this Order shall govern.

11.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

12.    The Debtor shall, within three (3) business days hereof, serve a copy of this Order on all parties that received notice of the Application, as well as all parties that have appeared in this case and requested notice since the Debtor filed the Motion, and file a certificate of service evidencing such service.

**- End of Document -**

ATLANTA:5280340.2

**Prepared and Presented by:**

MCKENNA LONG & ALDRIDGE LLP

s/ J. Michael Levengood
Gary W. Marsh
Georgia Bar No. 471290
J. Michael Levengood
Georgia Bar No. 447934
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
404-527-4000 (phone)
404-527-4198 (fax)
gmarsh@mckennalong.com
mlevengood@mckennalong.com

*Proposed Counsel for Southwest Georgia*
*Ethanol, LLC, Debtor in Possession*

ATLANTA:5280340.2