# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | |
|---|---|
| **In re:** | |
| **Southwest Georgia Ethanol, LLC** *dba* **Southwest Georgia Ethanol, LLC, a FUEL Company,** | **Case No. 11-10145 – JDW** |
| **Debtor.** | **Chapter 11** |

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
## AS OF AUGUST 26, 2011

The above-captioned debtor and debtor in possession hereby submits its Chapter 11 Plan of Reorganization dated as of August 26, 2011.

Dated: August 26, 2011
Atlanta, Georgia

MCKENNA LONG & ALDRIDGE LLP
Gary W. Marsh
Georgia Bar No. 471290
gmarsh@mckennalong.com
J. Michael Levengood
Georgia Bar No. 447934
mlevengood@mckennalong.com
Bryan E. Bates
Georgia Bar No. 140856
bbates@mckennalong.com
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

COUNSEL FOR THE DEBTOR IN POSSESSION

# TABLE OF CONTENTS

Page

ARTICLE I     DEFINITIONS, INTERPRETATION AND EXHIBITS.......................................1
    Section 1.01     Definitions .................................................................................1
    Section 1.02     Rules of Interpretation ...................................................20
    Section 1.03     Exhibits ..........................................................................20
ARTICLE II     CLASSIFICATION OF CLAIMS AND INTERESTS ........................20
    Section 2.01     Summary .........................................................................20
    Section 2.02     Unclassified Claims.......................................................21
    Section 2.03     Unimpaired Classes Deemed to Accept...................21
    Section 2.04     Impaired Classes Entitled to Vote .............................21
    Section 2.05     Impaired Classes Deemed to Reject...........................22
ARTICLE III     PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND
    INTERESTS.........................................................................................22
    Section 3.01     Satisfaction of Claims and Interests..........................22
    Section 3.02     Unclassified Claims, Classified Unimpaired and
    Impaired Claims and Classified Interests ...............................22
    Section 3.03     Administrative Claims...................................................22
    Section 3.04     DIP Facility Claims........................................................23
    Section 3.05     Priority Tax Claims........................................................23
    Section 3.06     Class 1: Senior Secured Lender Claims....................24
    Section 3.07     Class 2: Bond Claim.......................................................25
    Section 3.08     Class 3: Fagen Claim......................................................25
    Section 3.09     Class 4: Other Secured Claims....................................26
    Section 3.10     Class 5: General Unsecured Claims ...........................26
    Section 3.11     Class 6: Convenience Claims........................................27
    Section 3.12     Class 7: Class A Member Interest................................27
    Section 3.13     Class 8: Class B Member Interest................................28
ARTICLE IV     ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN..................28
    Section 4.01     Acceptance by Impaired Classes of Claims and
    Interests..................................................................................28

ATLANTA:5326243.1

Section 4.02    Voting Classes....................................................................28

Section 4.03    Ballot Instructions ............................................................29

Section 4.04    Cramdown ..........................................................................29

ARTICLE V    PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN..........29

Section 5.01    Timing of Distributions ....................................................29

Section 5.02    Distributions to Holders of Allowed Claims ..........................29

Section 5.03    Distributions After Allowance ......................................29

Section 5.04    Litigation Trust .................................................................30

Section 5.05    Delivery of Distributions...................................................31

Section 5.06    Method of Cash Distributions.........................................31

Section 5.07    Failure to Negotiate Checks .........................................32

Section 5.08    Unclaimed Distributions ...................................................32

Section 5.09    Limitation on Distribution Rights.................................32

Section 5.10    Fractional Dollars .............................................................32

Section 5.11    Compliance With Tax Requirements....................................32

Section 5.12    De Minimis Distributions...................................................33

Section 5.13    No Payment or Distribution Pending Allowance.................33

Section 5.14    Estimation of Claims.........................................................33

Section 5.15    No Interest on Claims........................................................33

Section 5.16    Distributions Only On Timely-Filed, Allowed Claims .........33

Section 5.17    Record Date For Distributions.....................................34

Section 5.18    Survival Of Certain Corporate Indemnities ...........................34

ARTICLE VI    EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS...................34

Section 6.01    Treatment of Executory Contracts and Unexpired
Leases ................................................................................34

Section 6.02    Cure of Defaults for Assumed Contracts and Leases...........34

Section 6.03    Bar Date for Claims for Rejection Damages...........................35

Section 6.04    Treatment of Rejection Claims ....................................35

ATLANTA:5326243.1

# TABLE OF CONTENTS

## (continued)

Section 6.05    Rejection of Contracts and Leases ............................................... 35

Section 6.06    Waiver of Rejection Damages by FUEL .................................... 35

ARTICLE VII   MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 35

Section 7.01    Property of the Debtor's Estate .................................................... 35

Section 7.02    Continued Corporate Existence .................................................... 35

Section 7.03    Initial Officers ............................................................................ 36

Section 7.04    New Board of Managers ............................................................. 36

Section 7.05    Powers and Duties of the Litigation Trustee ......................... 36

Section 7.06    Restructuring Transactions ......................................................... 37

Section 7.07    Corporate Action ......................................................................... 37

Section 7.08    Issuance of New Membership Interests .................................. 37

Section 7.09    Listing of New Membership Interests ..................................... 38

Section 7.10    Cancellation of Securities and Agreements ........................... 38

Section 7.11    Exit Financing .............................................................................. 38

Section 7.12    Substantial Consummation ......................................................... 39

Section 7.13    Effective Date Fees and Expenses ............................................. 39

Section 7.14    Post- Effective Date Notice Limited .......................................... 39

Section 7.15    Plan Supplement ........................................................................ 39

ARTICLE VIII  PRESERVATION OF CAUSES OF ACTION AND RIGHT TO
DEFEND AND CONTEST ........................................................................ 40

Section 8.01    Preservation of Rights ................................................................. 40

Section 8.02    Rights of Action ........................................................................... 40

Section 8.03    Setoffs ............................................................................................ 41

Section 8.04    Resolution of Disputed Claims .................................................. 41

ARTICLE IX    CONDITIONS TO CONSUMMATION OF THE PLAN ................................... 42

Section 9.01    Confirmation Order ...................................................................... 42

Section 9.02    Conditions to Effective Date ...................................................... 42

Section 9.03    Waiver of Conditions .................................................................. 42

ATLANTA:5326243.1

Section 9.04    Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan ........................... 43

ARTICLE X    EFFECTS OF CONFIRMATION ................................................................ 43

Section 10.01    Vesting of the Debtor's Assets Free and Clear ..................... 43

Section 10.02    Continued Corporate Existence .................................................. 43

Section 10.03    Discharge ........................................................................................ 43

Section 10.04    Injunction ....................................................................................... 44

Section 10.05    Exculpation .................................................................................... 45

Section 10.06    Releases .......................................................................................... 46

Section 10.07    Other Documents and Actions .................................................. 47

Section 10.08    Term of Injunctions or Stays .................................................... 47

Section 10.09    Preservation of Insurance .......................................................... 47

Section 10.10    Guaranties ...................................................................................... 47

Section 10.11    Subordination Rights .................................................................. 47

Section 10.12    Avoidance and Recovery Actions Preserved ......................... 47

Section 10.13    Other Causes of Action Preserved ........................................... 47

Section 10.14    Causes of Action Retained by Debtor or Assigned to the Litigation Trustee ................................................................. 48

Section 10.15    Allocation of Plan Distributions between Principal and Interest ................................................................................... 48

ARTICLE XI    RETENTION OF JURISDICTION ........................................................... 49

Section 11.01    Exclusive Jurisdiction of Bankruptcy Court .......................... 49

Section 11.02    Failure of Bankruptcy Court to Exercise Jurisdiction ......... 51

ARTICLE XII    MISCELLANEOUS PROVISIONS ....................................................... 51

Section 12.01    Binding Effect of Plan ................................................................ 51

Section 12.02    Withdrawal of the Plan ............................................................... 51

Section 12.03    Final Order ..................................................................................... 51

Section 12.04    Modification of the Plan ............................................................. 52

Section 12.05    Business Days ............................................................................... 52

ATLANTA:5326243.1

| | | |
|---|---|---|
| Section 12.06 | Severability | 52 |
| Section 12.07 | Governing Law | 52 |
| Section 12.08 | Dissolution of Committee | 52 |
| Section 12.09 | Post-Confirmation Operating Reports | 53 |
| Section 12.10 | Notices | 53 |
| Section 12.11 | Filing of Additional Documents | 53 |
| Section 12.12 | Section 1125 of the Bankruptcy Code | 54 |
| Section 12.13 | Section 1146 Exemption | 54 |
| Section 12.14 | Section 1145 Exemption | 54 |
| Section 12.15 | Time | 54 |
| Section 12.16 | No Attorneys' Fees | 55 |
| Section 12.17 | No Injunctive Relief | 55 |
| Section 12.18 | Continued Confidentiality Obligations | 55 |
| Section 12.19 | No Admissions or Waivers | 55 |
| Section 12.20 | Entire Agreement | 55 |
| Section 12.21 | Waiver | 55 |

ATLANTA:5326243.1

# INTRODUCTION

This chapter 11 plan (as amended or modified hereafter in accordance with its terms, the "Plan"), dated as of August 26, 2011, is proposed by Southwest Georgia Ethanol, LLC (the "Debtor"). Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtor's history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL CREDITORS OF AND HOLDERS OF INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTOR (WITH THE CONSENT OF THE AGENTS) RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof. Claims against, and Interests in, the Debtor (other than DIP Facility Claims, Administrative Claims and Priority Tax Claims) are classified in Article II hereof and treated in Article III hereof.

## ARTICLE I
## DEFINITIONS, INTERPRETATION AND EXHIBITS.

Section 1.01 <u>Definitions</u>. Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise. As used herein:

"Adequate Protection Claims" means all liens and claims of the Senior Secured Lenders granted pursuant to the Financing Order or subsequent order of the Bankruptcy Court, including but not limited to, any debtor in possession financing order.

"Administrative Claim" means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post-Petition Date cost or expense of preserving the Debtor's Estate or operating the business of the Debtor, (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its businesses, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 328, 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtor's Estate under section

-1-

1930 of title 28 of the United States Code; and (c) any Allowed administrative claim or superpriority claim granted to the Senior Secured Lenders pursuant to the Financing Order.

"Administrative Claim Bar Date" means the first Business Day that is thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Agents" means, collectively, the DIP Agent and the Pre-Petition Agent.

"Allowed" means, with reference to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date (or the Administrative Claim Bar Date if an Administrative Claim), provided that at the time of the Effective Date the Debtor has not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"Allowed Claim" means a Claim that is Allowed.

"Allowed Interest" means an Interest that is Allowed.

"Assigned Avoidance Actions" means any Avoidance Actions that are assigned by the Debtor (with the consent of the Agents) to the Litigation Trustee.

"Assumed Contracts" means the certain executory contracts and unexpired leases to be assumed by the Debtor (with the consent of the Agents) as set forth on the Schedule of Assumed Contracts identified in Exhibit 1 hereto as it may be amended in the Plan Supplement.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

"Ballot" means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as in effect on the Petition Date, together with

ATLANTA:5326243.1

all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Georgia, Albany Division or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court.

"Bond Claim" means the secured and unsecured Claims held by the Bond Trustee as representative of the trust estate, secured by the Bond Collateral Documents, for payments due under the Subordinated Loan Agreement and the Bonds.

"Bond Collateral Documents" means (i) the Bond Indenture, (ii) the "Security Agreement" (as defined in the Bond Indenture), and any documents granting, or relating to the grant, of security for the payment of amounts due under the Subordinated Loan Agreement and the Bonds.

"Bond Indenture" means the Trust Indenture, dated as of November 1, 2006, made and entered into between the Bond Issuer and the Bond Trustee, as amended by the Bond Omnibus Assignment and Amendment Agreement.

"Bond Issuer" means the Mitchell County Development Authority, a public body corporate and politic created and existing under the laws of the State of Georgia.

"Bond Omnibus Assignment and Amendment Agreement" means the Omnibus Assignment and Amendment Agreement, dated as of December 5, 2007, among the Parent, the Debtor, the Bond Issuer, the Bond Trustee, Southwest Georgia Farm Credit, ACA and Wachovia Bank, National Association.

"Bonds" means the Mitchell County Development Authority Revenue Bonds (First United Ethanol, LLC Project), Series 2006.

"Bond Trustee" means Regions Bank, a banking corporation with a corporate trust office in Atlanta, Georgia.

ATLANTA:5326243.1

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Georgia are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Causes of Action" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor, including, but not limited to, the Avoidance Actions.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of: (a) 120 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) above.

"Class" means each class of Claims or Interests as classified in Article II of the Plan.

"Class A Member" means FUEL that has 100% of the economic Interests in the Debtor.

"Class B Member" means CT Corporation Staffing, Inc. that has no economic Interests in the Debtor, and which was appointed to make the Debtor a bankruptcy-remote entity.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Committee Members" means the members of the Committee.

"Confirmation" or "Confirmed" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

ATLANTA:5326243.1

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code which shall be acceptable in form and substance to the Agents.

"Convenience Claims" means Allowed General Unsecured Claims within the Convenience Class Cap.

"Consummation Date" means the date on which the Litigation Trustee makes the final Distribution of the General Unsecured Creditors Fund in accordance with the Plan.

"Convenience Class Cap" means Allowed General Unsecured Claims less than or equal to five thousand dollars ($5,000.00).

"Creditor" means any Person that is the Holder of any Claim against the Debtor.

"Cure Amounts" means all amounts that must be paid and all obligations that otherwise must be satisfied, including pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with the assumption of the Assumed Contracts.

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Debtor" shall have the meaning set forth in the Introduction.

"DIP Accounts Bank" means Amarillo National Bank and such other Person that may, from time to time, be appointed DIP Accounts Bank pursuant to and in accordance with the DIP Credit Documents.

"DIP Administrative Agent" means Gleacher and such other Person that may, from time to time, be appointed DIP Administrative Agent under the DIP Credit Documents.

"DIP Agent" means Gleacher and such other Person that may, from time to time, be appointed both DIP Administrative Agent and DIP Collateral Agent pursuant to and in accordance with the DIP Credit Documents.

"DIP Collateral Agent" means Gleacher, and such other Person that may, from time to time, be appointed DIP Collateral Agent under the DIP Credit Documents.

"DIP Credit Documents" means that certain senior debtor-in-possession credit agreement, dated as of February 4, 2011, as amended, supplemented or otherwise modified from time to time, and all documents executed in connection therewith by and between the Debtor, WestLB, as predecessor DIP Agent and DIP Collateral Agent, and the other Lenders signatory thereto from time to time.

"DIP Facility Claims" means all Claims arising under or pursuant to the DIP Credit Documents.

"DIP Lenders" means such Person or Persons that may, from time to time, be the Lenders as defined by the DIP Credit Documents.

ATLANTA:5326243.1

"Disallowed" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of the Debtor, the Reorganized Debtor or the Litigation Trustee, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disallowed Interest" means an Interest, or any portion thereof, that is Disallowed.

"Disbursing Agent" means the Debtor, the Reorganized Debtor, or the Litigation Trustee or such other Entity that is designated by the Debtor (with the consent of the Agents), the Reorganized Debtor or the Litigation Trustee to disburse Property pursuant to the Plan.

"Disclosure Statement" means the Debtor's Disclosure Statement with Respect to the Chapter 11 Plan Dated as of August 26, 2011, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Debtor, as the same may be altered, amended, supplemented or modified from time to time, which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018, and which shall be acceptable in form and substance to the Agents.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed. For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Disputed Interest" means an Interest, or any portion thereof, that is Disputed. For purposes of the Plan, an Interest that has been neither Allowed nor Disallowed shall be considered a Disputed Interest.

"Distribution" means any distribution by the Debtor, the Reorganized Debtor or the Litigation Trustee to a Holder of an Allowed Claim or Interest.

"Distribution Date" means (i) the Initial Distribution Date, and (ii) the first Business Day after the end of the months of May and November, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Final Distribution Date; provided, however, that a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of all Allowed Claims on such Distribution Date is less than $1,000, in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

"Distribution Proceeds" means total proceeds from a Liquidity Event less the sum of (i) any outstanding unpaid Preferred Return, (ii) the principal amount of any indebtedness that is required to be repaid in connection with such Liquidity Event, (iii) the reasonable and customary

ATLANTA:5326243.1

out-of-pocket costs, fees (including investment banking fees), commissions, premiums and expenses incurred by the Debtor or its subsidiaries in connection with such Liquidity Event, (iv) federal, state, provincial, foreign and local taxes reasonably estimated to be actually payable within the current or the immediately succeeding tax year as a result of any gain recognized in connection therewith, (v) a reasonable reserve for current and future operating expenses, liquidation expenses, contingencies and emergencies, and (vi) a reasonable reserve for any purchase price adjustment or any indemnification payments (fixed and contingent) attributable to the seller's obligations to the purchaser undertaken by Debtor or any of its subsidiaries in connection with such Liquidity Event.

"D&O Releasees" means the current and former directors, members, and managers of the Debtor or of the Parent, in each case as of the Petition Date or that have become directors, members, or managers thereafter but prior to the Effective Date, but only to the extent each such party agrees to forever release, waive and discharge those Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the Debtor, the Estate, the Litigation Trust, or the Litigation Trustee, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, the Plan, the Litigation Trust or the Litigation Trustee; provided, however, that the foregoing released parties shall be released only from liabilities arising out of actions taken in such capacity; provided further, however, that the D&O Releases are inapplicable in all respects to the Assigned Avoidance Actions.

"Dollar Family Group" means Tommy Dollar, Dollar Farm Products, Inc., Tamara Dollar Hader and any of their affiliates that received payments from the Debtor prior to the Petition Date that may be avoidable under state or federal law.

"Dollar Family Group Compromise" means the settlement between the Debtor and the Dollar Family Group subject to Bankruptcy Court approval under Bankruptcy Code Section 1123(b)(3)(A) that is to be incorporated in a written settlement agreement under which in return for a release of any and all claims the Debtor has against any member of the Dollar Family Group other than for the performance of obligations arising under the settlement agreement, the Dollar Family Group (i) shall pay to the Litigation Trustee the cash sum of $500,000 in installments of $200,000 on or before December 1, 2011, $200,000 on or before July 7, 2012 and $100,000 on or before December 1, 2012, and (ii) shall provide the following non-monetary benefits to the Debtor and Reorganized Debtor, namely: (1) each member of the Dollar Family Group shall execute a waiver and release of any and all claims any of them have or may have against the Debtor including any unsecured claim and any claim under 11 U.S.C. § 502(h), (2) each member of the Dollar Family Group will offer to sell any corn that it harvests to the Reorganized Debtor at the then current market price for a period of three years following the approval of the Settlement Agreement by the Bankruptcy Court in the Confirmation Order and the Dollar Family Group estimates they will produce 300,000 to 400,000 bushels of corn annually over the three (3) year period following the Confirmation Date, (3) the Dollar Family Group will encourage local farmers in Southwest Georgia to sell their corn to the Reorganized Debtor at the then current market price for a period of three years following the Confirmation

ATLANTA:5326243.1

Date, and (4) Tommy Dollar will provide at no cost to the Reorganized Debtor at least ten hours of consulting services each week for a period of three years following the Confirmation Date.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived in accordance with Section 9.03 of the Plan), provided that no stay of the Confirmation Order is then in effect.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Estate" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

"Exculpated Persons" means: (a) directors, officers and employees of the Debtor, as of the Petition Date but prior to the Effective Date, and the Debtor's agents and professionals, (b) the DIP Lenders, (c) the Senior Secured Lenders, (d) the Agents, (e) the Holder of the Bond Claim (if Class 2 votes to accept the Plan), (f) Fagen (if Class 3 votes to accept the Plan), (g) the Committee and the Committee Members (if Classes 5 and 6 vote to accept the Plan), (h) FUEL; (i) the Litigation Trustee, and (j) to the extent that such parties are deemed to be Exculpated Persons, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, attorneys advisors and professionals of the parties identified in subclauses (a) through (i).

"Exit Financing" means that certain senior secured loan facility, in an aggregate principal amount not to exceed $20 million, to be entered into by the Reorganized Debtor effective as of the Effective Date and on such material terms and conditions as contained in the Exit Financing Commitment Letter, which shall be acceptable in form and substance to the Agents.

"Exit Financing Agreement" means a credit agreement, dated on or after the Effective Date, by and among the Reorganized Debtor and the lender or lenders party thereto, as the same may have been subsequently amended, restated, amended and restated, supplemented or otherwise modified from time to time, together with all instruments and agreements related thereto, the terms and conditions of which shall be acceptable to the Agents.

"Exit Financing Commitment Letter" means a commitment letter providing for a senior secured credit facility of up to an aggregate principal amount not to exceed $20 million, the terms and conditions of which shall be acceptable to the Agents and a copy of which shall be included in the Plan Supplement.

"Exit Financing Documents" means all documents, agreements, schedules and ancillary documents relating to the Exit Financing, each of which shall be acceptable in form and substance to the Agents.

"Exit Financing Lender" means the lender or lenders from time to time under the Exit Financing.

ATLANTA:5326243.1

"Fagen" means Fagen, Inc., a Minnesota corporation.

"Fagen Claim" means the secured and unsecured Claims held by Fagen against the Debtor.

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final Distribution" means the Distribution by the Litigation Trustee that satisfies all Allowed Other General Unsecured Claims or Convenience Claims to the extent provided in accordance with this Plan.

"Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"Financing Order" means the Order entered in the Chapter 11 Case on February 3, 2011 at Docket No. 36 and the Order entered in the Chapter 11 Case on February 24, 2011 at Docket No. 111, entered by the Bankruptcy Court authorizing and approving the Debtor's use of cash collateral pursuant to section 363 of the Bankruptcy Code and permitting debtor in possession financing pursuant to section 364 of the Bankruptcy Code, and any extensions or amendments thereof.

"First Trigger Event" means the date upon which the aggregate Unreturned Preferred Redemption Value equals or is less than $35 million.

"FUEL" means the Parent.

"General Unsecured Claims" means, collectively, the Rejection Claims, the Litigation Claims, and any other Claim that is not an Administrative Claim, DIP Facility Claim, Priority Tax Claim, Professional Fee Claim, Other Priority Claim, a Secured Lender Claim or a Secured Lender Deficiency Claim.

ATLANTA:5326243.1

"General Unsecured Creditors Fund" means the sum of $500,000 plus net recovery of Avoidance Actions that are assigned by the Debtor to the Litigation Trust hereunder. This amount shall be funded by the cash portion of the Dollar Family Group Compromise.

"Gleacher" means Gleacher Products Corp., which is the successor Administrative Agent and the successor Collateral Agent under the (i) Pre-Petition Credit Agreement and under the Pre-Petition Working Capital Agreement and (ii) DIP Credit Documents.

"Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Impaired Interest" means an Interest which is Impaired.

"Initial Distribution Date" means the Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than sixty (60) days after the Effective Date unless otherwise ordered by the Bankruptcy Court; provided further, however, that the New Membership Interests will be distributed on the Effective Date.

"Interests" means any and all equity interests, ownership interests or member units in the Debtor issued by the Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a corporation or limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or

-10-

ATLANTA:5326243.1

Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"Liquidity Event" means the occurrence of any of the following events: (a) the consummation of a recapitalization, reorganization, merger, consolidation or similar form of transaction involving the Reorganized Debtor and its subsidiaries, as a result of which the persons or entities that directly or indirectly beneficially owned one hundred percent (100%) of the value and voting power of the outstanding equity interests of the Reorganized Debtor and its subsidiaries (taken as a whole) immediately prior to the consummation of such transaction receive consideration in exchange for some or all of such equity interests and cease to directly or indirectly own at least fifty percent (50%) of the aggregate voting power of the entity surviving, or resulting from, such transaction; (b) the sale or other disposition of all or substantially all of the assets of the Reorganized Debtor and its subsidiaries (taken as a whole); or (c) any transaction as a result of which a person or entity (other than a person or entity who directly or indirectly beneficially owned equity interests of the Reorganized Debtor and its subsidiaries as of the date hereof) pays consideration to the persons or entities who were holders of equity interests of the Reorganized Debtor and its subsidiaries immediately prior to consummation of such transaction in exchange for some or all of their equity interests and thereby becomes a direct or indirect "beneficial owner" (as used in this definition, such term and terms of similar import shall have the meaning set forth in Rule 13d-3 of the Securities Exchange Act of 1934, as amended) of fifty percent (50%) or more of the aggregate value and voting power of the outstanding equity interests of the Reorganized Debtor and its subsidiaries (taken as a whole).

"Liquidity Event Distributions" means the distribution of Distribution Proceeds from a Liquidity Event to be made by the Reorganized Debtor, which shall be made as follows:

(a) In the event a Liquidity Event occurs any time prior to the payment in full of the Preferred Redemption Value *and* the Distribution Proceeds from such Liquidity Event are less than the Unreturned Preferred Redemption Value, then the Distribution Proceeds from such Liquidity Event shall be paid as follows: (i) 99% to Holders of New Preferred Units; and (ii) 1% to Holders of New Class A Units.

(b) In the event a Liquidity Event occurs any time prior to the payment in full of the Preferred Redemption Value *and* the Distribution Proceeds from such Liquidity Event are greater than the Unreturned Preferred Redemption Value, then the Distribution Proceeds from such Liquidity Event shall be paid as follows: (i) first to Holders of New Preferred Units to the extent of the Unreturned Preferred Redemption Value; (ii) second, to Holders of New Class A Units in an amount equal to the greater of 1% of the Distribution Proceeds from such Liquidity Event or 90% of the remaining Distribution Proceeds after making the payment in subparagraph (i) above; and (iii) third, the balance of the Distribution Proceeds, if any, to the Holders of New Class B Units; provided, however, that, notwithstanding the foregoing, in no event shall Holders of the New Class A Units receive less than 1% of the Distribution Proceeds from such Liquidity Event, and in such circumstances, the distribution otherwise payable to Holders of the New Preferred

-11-

Units shall be reduced to the extent required to ensure that Holders of New Class A Units receive 1% of the Distribution Proceeds.

(c) In the event a Liquidity Event occurs at any time **during the period commencing immediately** after the Preferred Redemption Value has been paid in full and prior to the second anniversary of the date the Preferred Redemption Value has been paid in full, the Distribution Proceeds from such Liquidity Event will be paid as follows: (i) first, 75% of such Distribution Proceeds to Holders of New Class B Units; and (ii) second, the balance of such Distribution Proceeds shall be distributed 75% to Holders of New Class A Units and 25% to Holders of New Class B Units; provided, however, that, notwithstanding the foregoing, in no event shall Holders of the New Class A Units receive less than 1% of the Distribution Proceeds from such Liquidity Event and, in such circumstances, the distribution otherwise payable to Holders of the New Class B Units shall be reduced to the extent required to ensure that Holders of New Class A Units receive 1% of the Distribution Proceeds.

(d) In the event a Liquidity Event occurs at any time after the second anniversary of the date on which the Preferred Redemption Value has been paid in full, the Distribution Proceeds from such Liquidity Event will be paid as follows: (i) first, 90% of such Distribution Proceeds to Holders of New Class A Units; and (ii) second, 10% of such Distribution Proceeds to Holders of New Class B Units.

For the avoidance of doubt, if a Liquidity Event occurs as a result of action by the Reorganized Debtor before the payment in full of the Preferred Redemption Value that is closed during the period between the payment in full of the Preferred Redemption Value and the second anniversary of the payment in full of the Preferred Redemption Value, such as by way of example and not limitation, a contract to sell or otherwise dispose of all or substantially all of the assets of the Reorganized Debtor that is executed before, and that closes after, the payment in full of the Preferred Redemption Value, then the Distribution Proceeds shall not be paid pursuant to paragraph (c), but pursuant to paragraph (a) or paragraph (b), as appropriate.

In any event, if the New Class A Units are not issued pursuant to the Plan, any distribution otherwise payable to Holders of the New Class A Units shall be paid 100% to the Holders of New Class B Units.

"Litigation Claims" means Claims relating to pending litigation or other filed or unfiled Causes of Action against the Debtor as of its Petition Date.

"Litigation Trust" means the trust to be established in accordance with Section 5.04 of the Plan.

"Litigation Trust Agreement" means the agreement to be executed between the Litigation Trustee and the Debtor establishing the Litigation Trust, which will be filed with the Plan Supplement and which shall be acceptable in form and substance to the Agents.

ATLANTA:5326243.1

"Litigation Trust Documents" means the Litigation Trust Agreement and any ancillary documents relating thereto, which shall be acceptable in form and substance to the Agents.

"Litigation Trustee" means the trustee of the Litigation Trust; provided that in no event shall the Debtor or any Affiliate of the Debtor be the Litigation Trustee.

"Miscellaneous Secured Claims" means any Secured Claim other than the Secured Lender Claims, including without limitation, any Secured Claim arising from a Tax.

"New Class A Units" means the class of membership interests in the Reorganized Debtor issued hereunder and governed by the New LLC Agreement. Except for Liquidity Event Distributions, holders of the New Class A Units shall be entitled to receive, in the aggregate, 75% of all distributions from the Reorganized Debtor (whether made pursuant to a liquidation or otherwise, and whether in cash or property) after such time as holders of the New Preferred Units have received their full Preferred Redemption Value.

"New Class B Units" means the class of membership interests in the Reorganized Debtor issued hereunder and governed by the New LLC Agreement. Except for Liquidity Event Distributions, holders of the New Class B Units shall be entitled to receive, in the aggregate, 25% of all distributions from the Reorganized Debtor (whether made pursuant to a liquidation or otherwise, and whether in cash or property) after such time as holders of the New Preferred Units have received their full Preferred Redemption Value; provided, however, if the Class A Units are not issued pursuant to the Plan, then the New Class B Units shall be entitled to 100% of all distributions from the Reorganized Debtor.

"New Common Units" means, collectively, the New Class A Units and the New Class B Units.

"New LLC Agreement" means the limited liability company agreement of the Reorganized Debtor dated as of the Effective Date, a substantially final form of which will be contained in an exhibit to the Disclosure Statement, the form and substance of which shall be acceptable to the Agents.

"New Membership Interests" means, collectively, the New Preferred Units, New Class A Units (if issued in accordance with the Plan) and New Class B Units as governed by the New LLC Agreement.

"New Preferred Units" means the class of membership interests in the Reorganized Debtor issued hereunder and governed by the New LLC Agreement which shall rank senior to all other classes of membership interests of the Reorganized Debtor. Holders of the New Preferred Units shall be entitled to receive distributions from the Reorganized Debtor (whether made pursuant to a liquidation or otherwise, and whether in cash or property) which shall be applied (i) first, to payment of any accrued and unpaid Preferred Return, and (ii) second, to the payment of any Unreturned Preferred Redemption Value. Holders of New Preferred Units will also be entitled to receive Liquidity Event Distributions in the manner set forth herein.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or

ATLANTA:5326243.1

establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"OCGA" means the Official Code of Georgia Annotated.

"Ordinary Course Trade Claims" means all trade accounts payable incurred by the Debtor after the Petition Date in the ordinary course of business and outstanding as of the Effective Date.

"Other Secured Claims" means any Secured Claim against the Debtor other than a Class 1 Claim, a Class 2 Claim or a Class 3 Claim.

"Parent" means First United Ethanol, LLC, a Georgia limited liability corporation, the sole Class A Member of the Debtor.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor of; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Petition Date" means February 1, 2011.

"Plan" means this Chapter 11 Plan dated as of August 26, 2011, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtor, including the Plan Supplement, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the terms hereof, provisions of the Bankruptcy Code and the provisions of the Bankruptcy Rules, the Confirmation Order and the terms and conditions of Section 12.04 of the Plan, and which shall be acceptable in form and substance to the Agents.

"Plan Supplement" means the compilation of documents and forms of documents, schedules, attachments and exhibits to this Plan, to be filed by the Debtor following the filing of this Plan as set forth herein, each of which documents and other materials shall be acceptable in form and substance to the Agents, as such Plan Supplement documents may be amended, modified, or supplemented from time to time with the consent of the Agents, and which shall include, but not be limited to, the following: (i) the Litigation Trust Agreement; (ii) the

ATLANTA:5326243.1

Litigation Trust Documents; and (iii) any amended or supplemental Schedule of Assumed Contracts.

"Preferred Redemption Value" means the aggregate initial capital contribution of all Holders, which shall be equal to $105,000,000.

"Preferred Return" means a cumulative preferred return, compounded annually, equal to 15% per annum, of the Unreturned Preferred Redemption Value, payable quarterly in cash or in kind at the discretion of the new board of managers.

"Pre-Petition Accounts Agreement" means that certain Accounts Agreement dated as of November 20, 2007 between the Debtor, the Pre-Petition Accounts Bank as accounts bank and securities intermediary, the Pre-Petition Collateral Agent and the Pre-Petition Administrative Agent.

"Pre-Petition Accounts Bank" means Amarillo National Bank and such other Person that may, from time to time, be appointed Accounts Bank pursuant to and in accordance with the Pre-Petition Accounts Agreement.

"Pre-Petition Administrative Agent" means Gleacher and such other Person that may, from time to time, be appointed Pre-Petition Administrative Agent pursuant to and in accordance with the Pre-Petition Working Capital Agreement or the Pre-Petition Credit Agreement.

"Pre-Petition Agent" means Gleacher and such other Person that may, from time to time, be appointed both Pre-Petition Administrative Agent and Pre-Petition Collateral Agent pursuant to and in accordance with the Pre-Petition Working Capital Agreement or the Pre-Petition Credit Agreement.

"Pre-Petition Collateral Agent" means Gleacher and such other Person that may, from time to time, be appointed Pre-Petition Collateral Agent pursuant to and in accordance with the Pre-Petition Working Capital Agreement or the Pre-Petition Credit Agreement.

"Pre-Petition Credit Agreement" means that certain Loan Agreement, dated as of November 20, 2007, by and among SWGE, West LB as Pre-Petition Collateral Agent and Pre-Petition Administrative Agent and the Prepetition Term Lenders, pursuant to which the Prepetition Term Lenders extended a non-revolving loan to SWGE in the principal amount of $100 million.

"Pre-Petition Intercreditor Agreement" means that certain Amended and Restated Subordination Agreement, dated as of December 5, 2007, by and among the Debtor, the Pre-Petition Collateral Agent as senior collateral agent, Southwest Georgia Farm Credit, ACA, as existing senior lender, the Bond Issuer, the Bond Trustee as subordinate bond trustee, and Wachovia Bank, National Association as subordinate bondholder.

"Pre-Petition Pledge Agreement" means the Pledge and Security Agreement, dated on or about November 20, 2007, among the Debtor, the Parent and the Pre-Petition Collateral Agent, pursuant to which the Parent pledged one hundred percent (100%) of its equity interests in the Debtor to the Pre-Petition Collateral Agent.

-15-

"Pre-Petition Secured Term Notes" means those certain promissory notes executed by SWGE in favor of the Pre-Petition Secured Term Lenders.

"Pre-Petition Term Loan Lenders" means those certain Lenders under the Pre-Petition Credit Agreement.

"Pre-Petition Working Capital Agreement" means that certain Loan Agreement, dated as of November 20, 2007, by and among SWGE, WestLB as Agent, and the Prepetition Working Capital Lenders, pursuant to which the Prepetition Working Capital Lenders extended a revolving loan to SWGE in the principal amount of $15 million.

"Pre-Petition Working Capital Lenders" means those certain Lenders under the Pre-Petition Working Capital Agreement.

"Pre-Petition Working Capital Notes" means those certain promissory notes executed by SWGE in favor of the Prepetition Working Capital Lenders.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

"Professional Fee Claim" means a claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application made to the Bankruptcy Court by Professionals in the Chapter 11 Case.

"Professionals" means any professional employed in these Chapter 11 Case pursuant to sections 327, 363 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code.

"Property" means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

"Record Date" means, (i) for purposes of making distributions under this Plan on account of Allowed Claims, the Effective Date, and (ii) for purposes of casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan.

"Reinstated or Reinstatement" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any

-16-

contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Claims" means the claims of any non-Debtor counterparty to any unexpired leased of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Releasees" means: (a) the Debtor, (b) the DIP Lenders, (c) the Senior Secured Lenders, (d) the Agents, (3) the Holder of the Bond Claim (if Class 2 votes to accept the Plan), (f) Fagen (if Class 3 votes to accept the Plan), (g) FUEL, (h) the Dollar Family Group to the extent the Dollar Family Group Compromise is approved contemporaneously with Confirmation of the Plan and (i) to the extent such parties are deemed Releasees, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors and professionals of the parties identified in subclauses (a) through (h), except as set forth in the D&O Releasees; provided, however, that the foregoing released parties identified in subclauses (a) through (i) above shall be released only from liabilities arising out of actions taken in such capacity.

"Reorganized Debtor" means the Debtor from and after the Effective Date.

"Required Lenders" means Required Lenders as that term is defined in the Pre-Petition Credit Agreement.

"Retained Actions" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estate may hold against any Person, other than a member of the Dollar Family Group to the extent the Dollar Family Group Compromise is approved contemporaneously with Confirmation of the Plan, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (iii) claims and Causes of Action relating to strict enforcement of any of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of any of the Debtor's accounts receivable or other receivables or rights to payment created or arising in

-17-

the ordinary course of the Debtor's business, including, without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

"Schedule of Assumed Contracts" means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtor, which schedule is set forth in Exhibit 1 hereto and which shall be acceptable in form and substance to the Agents.

"Schedules" means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor in the Chapter 11 Case, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

"Second Trigger Event" means the date upon which the aggregate Unreturned Preferred Redemption Value equals or is less than $0.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

"Secured Lenders" means the Senior Secured Lenders and the Subordinated Secured Lenders.

"Secured Lender Claims" means (i) Claims of the Secured Lenders arising under the Secured Lender Credit Facilities and (ii) Claims of the Subordinated Secured Lenders arising under the Subordinated Debt Documents or the Subordinated Deed to Secure Debt, but as to both (i) and (ii) only to the extent that such Claims are Secured Claims.

"Secured Lender Deficiency Claims" means Claims of the Secured Lenders arising under the Secured Lender Credit Facilities but only to the extent such Claims are not Secured Claims.

"Securities Act" means the Securities Act of 1933, as amended.

"Senior Secured Lenders" means the Pre-Petition Term Loan Lenders and the Pre-Petition Working Capital Loan Lenders.

"Senior Secured Lender Credit Facilities" means the Pre-Petition Credit Agreement and the Pre-Petition Working Capital Loan Agreement.

"Specified Georgia Tax Obligation" means any obligation or liability (i) under OCGA § 48-8-46 for any Taxes imposed pursuant to Chapter 8 of Title 48 of the OCGA (Sales and Use Taxes), (ii) under OCGA § 48-7-106 for any Taxes imposed pursuant to Chapter 7 of Title 48 of the OCGA (Income Taxes), (iii) under OCGA § 48-9-7 for any Taxes imposed pursuant to Article 1 of Chapter 9 of Title 48 of the OCGA (Motor Fuel Tax), or (iv) under OCGA § 34-8-175 for any Taxes imposed pursuant to Chapter 8 of Title 34 of the OCGA (Employment Security).

ATLANTA:5326243.1

"Subordinated Debt" means the payment obligations of the Debtor pursuant to the Subordinated Debt Documents.

"Subordinated Debt Documents" means (i) the Subordinated Loan Agreement, (i) each of the Bond Collateral Documents, (iii) the bond resolution adopted by the Bond Issuer on October 6, 2006, relating to the bonds, (iv) the bond resolution adopted by the Bond Issuer on October 19, 2007, relating to the bonds, (v) each of the bonds, (vi) the "Bond Placement Agreement" (as defined in the Bond Indenture) and (vii) each document executed after the date of the Pre-Petition Intercreditor Agreement in connection with the bonds or the Subordinated Debt in compliance with the Pre-Petition Intercreditor Agreement.

"Subordinated Deed to Secure Debt" means the Subordinated Deed to Secure Debt, Security Agreement and Assignment of Leases and Security Deposits, dated as of June 30, 2009, from the Debtor to Fagen.

"Subordinated Loan Agreement" means that certain Loan Agreement dated as of November 1, 2006 between the Bond Issuer and the Parent (as assigned to the Debtor and amended pursuant to the Pre-Petition Omnibus Assignment and Amendment Agreement), pursuant to which the Bond Issuer lent the Debtor the proceeds of the Bonds in the aggregate principal amount of ten million Dollars ($10,000,000), which Loan Agreement has been assigned by the Bond Issuer to the Bond Trustee pursuant to the Bond Indenture (except with respect to the rights reserved by the Bond Issuer in Granting Clause I of the Bond Indenture).

"Subordinated Note" means the Subordinated Promissory Note Due June 30, 2011, dated June 30, 2009, by Debtor payable to the order of Fagen.

"Subordination Agreement" means the Subordination Agreement, dated as of June 30, 2009, by and among the Debtor, the Pre-Petition Collateral Agent, as senior collateral agent, and Fagen, as subordinate claimholder.

"Subordinated Secured Lenders" means the Bond Trustee and Fagen.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed by, or collected by any such federal, state, local or foreign governmental authority.

"Unclaimed Property" means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor, the Reorganized Debtor or the Litigation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.07 of the Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

ATLANTA:5326243.1

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Middle District of Georgia.

"Unreturned Preferred Redemption Value" means the amount equal to the excess of Preferred Redemption Value over prior distributions made by the Company that constitute a return of such Preferred Redemption Value plus any accrued but unpaid Preferred Return.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtor's Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

"Voting Agent" means Epiq Bankruptcy Solutions, LLC.

"WestLB" means WestLB AG, New York Branch.

Section 1.02 <u>Rules of Interpretation</u>. All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code and the Plan). Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.15 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

Section 1.03 <u>Exhibits</u>. All Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01 <u>Summary</u>. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or

ATLANTA:5326243.1

Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date. The classification of Claims under this Plan is as follows:

| Class | Claim | Status | Entitled to Vote |
|-------|-------|--------|------------------|
| 1 | Senior Secured Lender Claims | Impaired | Yes |
| 2 | Bond Claim | Impaired | Yes |
| 3 | Fagen Claim | Impaired | Yes |
| 4 | Other Secured Claims | Unimpaired | No |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Convenience Claims | Impaired | Yes |
| 7 | Class A Member Interest in the Debtor | Impaired | Yes |
| 8 | Class B Member Interest in the Debtor | Impaired | No |

Section 2.02 <u>Unclassified Claims</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded DIP Facility Claims, Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

Section 2.03 <u>Unimpaired Classes Deemed to Accept</u>. The Plan classifies the following Unimpaired Claims that are not entitled to vote on the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims and is not entitled to vote to accept or reject the Plan:

Class 4 shall consist of all Other Secured Claims.

Section 2.04 <u>Impaired Classes Entitled to Vote</u>. The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 1 shall consist of the Senior Secured Lender Claims.

Class 2 shall consist of the Bond Claim.

Class 3 shall consist of the Fagen Claim.

Class 5 shall consist of all General Unsecured Claims.

ATLANTA:5326243.1

Class 6 shall consist of all Convenience Claims.

Class 7 shall consist of the Class A Member Interest in the Debtor.

Section 2.05 <u>Impaired Classes Deemed to Reject</u>. The Plan classifies the following Impaired Class of Interests as an Impaired Class that is not entitled to vote to accept or reject the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of Claims or Interests that will receive no distribution is conclusively presumed to have rejected the Plan in respect of such Claims or Interests because the Plan does not entitle the Holders of such Claims Interests to receive or retain any Property under the Plan on account of such Claims or Interests. The Plan classifies Class 8 as an Impaired Class deemed to reject and not entitled to vote to accept or reject the Plan.

## ARTICLE III
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Section 3.01 <u>Satisfaction of Claims and Interests</u>. The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, and extinguishment of its Claims against or Interests in the Debtor and the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02 <u>Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests</u>. DIP Facility Claims, Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code. In addition, Class 4 Claims are classified as a Class of Claims that are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Class 1, 2, 3, 5 and 6 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims. Class 7 Interests are Impaired under the Plan and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Interests. Class 8 Interests will neither receive nor retain any Property on account of such Interests and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Interests are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Interests.

Section 3.03 <u>Administrative Claims.</u>

(a) <u>General</u>. Except as otherwise provided for in the Plan, on (i) the Initial Distribution Date, if an Administrative Claim is Allowed as of the Effective Date, or (ii) as soon as practicable after the date such Administrative Claim becomes an Allowed Claim, if an Administrative Claim is not Allowed as of the Effective Date, each holder of an Allowed Administrative Claim shall receive from the Debtor, in full satisfaction, settlement and release of, and in exchange for, such Allowed Administrative Claim, (a) Cash of the Debtor against

-22-

which such Administrative Claim is Allowed equal to the unpaid portion of such Allowed Administrative Claim, or (b) such less favorable treatment to which the Debtor (with the consent of the Agents) or Reorganized Debtor and the holder of such Allowed Administrative Claim shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Trade Claims shall be paid in the ordinary course of business of the Reorganized Debtor in accordance with the terms and subject to the conditions of any agreements governing relating thereto.

(b)     Payment of Statutory Fees. All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtor.

(c)     Bar Date for Administrative Claims.

(i)     General. Except for Administrative Claims of Professionals for Professional Fee Claims, which are addressed in Section 3.03(c)(ii) below, and except as otherwise provided herein, requests for payment of Administrative Claims must be Filed and served on counsel for the Debtor and counsel for the Pre-Petition Agent no later than (x) the Administrative Claim Bar Date, or (y) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of the Administrative Claim Bar Date. Holders of Administrative Claims (including, without limitation, the holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against any of the Debtor, the Reorganized Debtor or its property.

(ii)     Professional Fee Claims. Except as otherwise provided for in the Plan, all requests for compensation or reimbursement of Professional Fee Claims for services rendered from the Petition Date through the Effective Date shall be Filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, the United States Trustee, counsel to the Committee, counsel to the Pre-Petition Agent and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, no later than sixty (60) days after the Effective Date, unless such date is otherwise modified by order of the Bankruptcy Court. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of its Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor or its property, and such Professional Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Professional Fee Claims must be filed and served on the Reorganized Debtor, counsel for the Pre-Petition Agent, and counsel for the Reorganized Debtor and the requesting party on or before twenty (20) days after the filing and service of such request.

Section 3.04  DIP Facility Claims. Except to the extent that Holders of the DIP Facility Claims agree to different treatment, the DIP Facility Claims shall be repaid by the Debtor in full, in Cash, on the Effective Date in full and final satisfaction, settlement and release of such DIP Facility Claims.

Section 3.05  Priority Tax Claims. Except as otherwise provided for in the Plan, on (i) the Initial Distribution Date, if a Priority Tax Claim is Allowed as of the Effective Date, or (ii) the

ATLANTA:5326243.1

first Quarterly Distribution Date after the date such Priority Tax Claim becomes Allowed, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full satisfaction, settlement and release of, and in exchange for, such Allowed Priority Tax Claim, (A) Cash of the Debtor against which such Priority Tax Claim is Allowed equal to the amount of such Allowed Priority Tax Claim, (B) such less favorable treatment as to which such Debtor (with the consent of the Agents) or Reorganized Debtor, and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing; or (C) at the option of the Reorganized Debtor, Cash of the applicable Debtor in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

Section 3.06  Class 1: Senior Secured Lender Claims.

(a)  Classification: Class 1 consists of all Senior Secured Lender Claims against the Debtor.

(b)  Treatment: Class 1 Secured Claims are Impaired.  On the Effective Date, each Holder of an Allowed Class 1 Claim shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, their Pro Rata Share of the New Preferred Units and the New Class B Units.

All reasonable out-of-pocket fees, costs and expenses of the Pre-Petition Agent and Senior Secured Lenders, as approved by the Pre-Petition Agent, (including, without limitation, reasonable out-of-pocket fees, costs, expenses and disbursements of legal counsel, financial advisors and third-party appraisers, advisors and consultants advising the Senior Secured Lenders) shall be paid by the Debtor or the Reorganized Debtor on demand whether or not this Plan is confirmed and the transactions contemplated hereby are consummated.

The Reorganized Debtor shall agree to indemnify and hold harmless the Pre-Petition Agent and the Senior Secured Lenders, each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors and representatives (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, fees and disbursements of counsel), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), arising out of or in connection with or by reason of the transactions contemplated hereby, except to the extent arising from an Indemnified Party's gross negligence or willful misconduct.  In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by the Reorganized Debtor, any of its respective directors, security holders or creditors, an Indemnified Party or any other person or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

If Classes 2, 3, 5, 6 and 7 each votes as a Class to accept the Plan, then the Senior Secured Lenders by voting as a Class to accept the Plan are deemed to waive, solely in connection with this Plan, (i) any Adequate Protection Claims and any Secured Lender

-24-

Deficiency Claims, (ii) their rights under the Pre-Petition Intercreditor Agreement to permit the Holder of the Bond Claim to receive and retain any Plan Distributions, (iii) their rights under the Subordination Agreement to permit the Holder of the Fagen Claim to receive and retain any Plan Distributions, and (iv) any Bankruptcy Code section 507(a) or (b) Claims. Furthermore, the Senior Secured Lenders by voting as a Class to accept the Plan are deemed to consent to the use of their cash collateral by the Debtor to fund the General Unsecured Creditors Fund and the distribution to Holders of Class 6 Convenience Claims. If, however, any of Classes 2, 3, 5, 6 or 7 votes as a Class to reject the Plan, then the Senior Secured Lenders shall not be deemed to have waived any of the foregoing rights or claims, without regard to whether the Senior Secured Lenders vote as a Class to accept the Plan, and any claims of the Senior Secured Lenders pursuant to such rights and claims shall be retained and deemed Administrative Claims or Claims against the Debtor in Class 5 of the Plan, as the case may be.

(c)     Voting: Class 1 is Impaired and the Holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

Section 3.07  <u>Class 2: Bond Claim</u>.

(a)     Classification: Class 2 consists of the Bond Claim against the Debtor.

(b)     Treatment:  The Class 2 Bond Claim is Impaired.  On the Effective Date, each Holder of an Allowed Class 2 Bond Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim and of any Lien securing such Claim, and as a condition precedent thereto, the following treatment:

The Allowed Class 2 Claim shall receive on the Effective Date an interest in the Litigation Trust based on the percentage that its Allowed Claim bears to the total amount of Allowed Claims in Classes 2, 3 and 5. The holder of the Allowed Class 2 Claim may retain Plan Distributions without regard to the Pre-Petition Intercreditor Agreement. Accordingly, the Holder of an Allowed Class 2 Claim shall receive its Pro Rata Share of the General Unsecured Creditors Fund less a reserve established by the Litigation Trustee for expenses of administration of the Litigation Trust on or as soon as practicable after the later of (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court. On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Litigation Trustee shall continue to make pro rata Distributions to Holders of Allowed Class 2 Bond Claim, Class 3 Fagen Claim and Class 5 General Unsecured Claims of any available funds in the General Unsecured Creditors Fund until the Consummation Date. If Class 2 votes to accept the Plan, the Debtor will release any and all Claims against the Bond Trustee.

(c)     Voting: Class 2 is Impaired and the Holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

Section 3.08  <u>Class 3: Fagen Claim</u>.

(a)     Classification: Class 3 consists of the Fagen Claim against the Debtor.

-25-

(b)     Treatment: The Class 3 Fagen Claim is Impaired. On the Effective Date, each Holder of an Allowed Class 3 Fagen Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, and of any lien securing such Claim, and as a condition precedent thereto, the following treatment:

The Allowed Class 3 Claim shall receive on the Effective Date an interest in the Litigation Trust based on the percentage that its Allowed Claim bears to the total amount of Allowed Claims in Classes 2, 3 and 5. The holder of the Allowed Class 3 Claim may retain without regard to the Subordination Agreement. Accordingly, the Holder of the Allowed Class 3 Claim shall receive its Pro Rata Share of the General Unsecured Creditors Fund less a reserve established by the Litigation Trustee for expenses of administration of the Litigation Trust, on or as soon as practicable after the later of (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court. On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Litigation Trustee shall continue to make pro rata Distributions to Holders of Allowed Class 2 Bond Claim, Class 3 Fagen Claim and Class 5 General Unsecured Claims of any available funds in the General Unsecured Creditors Fund until the Consummation Date. If Class 3 votes to accept the Plan, the Debtor will release any and all warranty claims against Fagen that have accrued or may arise prior to the Confirmation Date.

(c)     Voting: Class 3 is Impaired and the Holders of Class 3 Claim is entitled to vote to accept or reject the Plan.

Section 3.09  Class 4: Other Secured Claims.

(a)     Classification: Class 4 consists of all Other Secured Claims against the Debtor.

(b)     Treatment: Each Holder of an Allowed Class 4 Other Secured Claim shall receive, at the election of the Debtor (with the consent of the Agents), in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Other Secured Claim on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Other Secured Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Class 4 Other Secured Claim; or (b) reinstatement of the Pre-Petition Secured Claim held by such Other Secured Creditor and cure of any pre-petition monetary default thereunder; or (c) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor (with the consent of the Agents).

(c)     Voting: Class 4 is Unimpaired and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 4 are not entitled to vote to accept or reject the Plan.

Section 3.10  Class 5: General Unsecured Claims.

(a)     Classification: Class 5 consists of all General Unsecured Claims against the Debtor.

ATLANTA:5326243.1

(b)     Treatment: Each Holder of an Allowed Class 5 General Unsecured Claim shall receive in full satisfaction, settlement, release, and extinguishment of such Claim the following treatment: each Claim shall receive on the Effective Date an interest in the Litigation Trust based on the percentage that its Allowed Claim bears to the total Allowed Claims in Classes 2, 3 and 5. Accordingly, each Holder of an Allowed Class 5 Claim shall receive its Pro Rata Share of the General Unsecured Creditors Fund less a reserve established by the Litigation Trustee for expenses of administration of the Litigation Trust, on or as soon as practicable after the later of (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such General Unsecured Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court. On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Litigation Trustee shall continue to make pro rata Distributions to Holders of Allowed Class 2 Bond Claim, Claim 3 Fagen Claim and Class 5 General Unsecured Claims of any available funds in the General Unsecured Creditors Fund until the Consummation Date.

(c)     Voting: Class 5 is Impaired and pursuant to section 1126 of the Bankruptcy Code Holders of Allowed Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

Section 3.11  <u>Class 6: Convenience Claims</u>.

(a)     Classification: Class 6 consists of all Convenience Claims against the Debtor.

(b)     Treatment: Provided Class 6 votes to accept the Plan, on either (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Convenience Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court, each Holder of an Allowed Class 6 Convenience Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, Cash in an amount equal to 5% of its Allowed Claim.  If Class 6 does not vote to accept the Plan, then there shall be no distribution to the Holders of Allowed Class 6 Convenience Claims.

(c)     Voting: Class 6 is Impaired and pursuant to section 1126 of the Bankruptcy Code Holders of Allowed Class 6 Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

Section 3.12  <u>Class 7: Class A Member Interest</u>.

(a)     Classification: Class 7 consists of the Class A Member Interest in the Debtor.

(b)     Treatment: If Classes 2, 3 and 5 each votes as a Class to accept the Plan, the Class A Member Interest in the Debtor shall be converted to the New Class A Units; which rights are affected by the issuance of the New Preferred Units and the New Class B Units.  Prior to the Second Trigger Event, the holders of the New Class A Units will waive, to the maximum extent permitted by law, any and all rights of a member under Delaware law and will grant to the board of managers of Reorganized Debtor an irrevocable power of attorney, coupled with an interest to exercise all voting rights of the holders of the New Class A Units, other than the right to elect

-27-

one director after the First Trigger Event. Upon the Second Trigger Event, the irrevocable power of attorney shall terminate and the holders of the New Class A Units shall be granted rights as members and voting rights equal to the New Class B Units (other than with respect to the designation of managers), with the New Class A Units and New Class B Units voting together as a combined class and each holder of New Class A Units and New Class B Units receiving one vote per unit, provided that holders of New Class A Units shall collectively have 75% of all voting rights and holders of New Class B Units shall collectively have 25% of all voting rights.

(c)     Voting: Class 7 is an Impaired Class and pursuant to section 1126 of the Bankruptcy Code, the Holder of the Allowed Class 7 Interest is entitled to vote to accept or reject the Plan.

Section 3.13  <u>Class 8: Class B Member Interest</u>.

(a)     Classification: Class 8 consists of the Class B Member Interest in the Debtor.

(b)     Treatment: The Class 8 Interest in the Debtor shall be canceled.

(c)     Voting: Class 8 is impaired. Holders of Class 8 Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 8 Interest is not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

Section 4.01  <u>Acceptance by Impaired Classes of Claims and Interests</u>. Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan. The Class 7 Interest is entitled to vote on the Plan but the Class 8 Interest is not entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

Section 4.02  <u>Voting Classes</u>. Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 1, 2, 3, 5, 6 and 7 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan. Classes of Claims Unimpaired under the Plan (Other Secured Claims (Class 4)) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Class B Member Interest in the Debtor (Class 8) is Impaired under the Plan and shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan. DIP Facility Claims, Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

ATLANTA:5326243.1

Section 4.03 <u>Ballot Instructions</u>. Each Holder of a Claim or Interest entitled to vote on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

Section 4.04 <u>Cramdown</u>. If all applicable requirements for Confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

Section 5.01 <u>Timing of Distributions</u>. Except as specifically set forth in the Plan and as otherwise provided in this Article V, distributions to be made on the Effective Date to Holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (i) 30 days after the Effective Date or (ii) 30 days after such later date when the applicable conditions of Section 6.02 (regarding cure payments for executory contracts and unexpired leases being assumed) and Section 5.05 (regarding undeliverable Distributions) are satisfied; <u>provided</u>, <u>however</u>, that distributions of the New Membership Interests must be made on the Effective Date. Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Section 5.03 of the Plan.

Section 5.02 <u>Distributions to Holders of Allowed Claims</u>. Except as otherwise provided herein, the Debtor, the Reorganized Debtor or the Litigation Trustee shall make all distributions required under the Plan in a manner consistent with the Plan. Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan. Payments and other distributions to be made pursuant to the Plan will be made by the Debtor, the Reorganized Debtor or the Litigation Trustee and will be available from the proceeds of the Sale and assets and funds transferred to or otherwise held by the Litigation Trustee or the Debtor as of and after the Effective Date. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Litigation Trustee or the Debtor shall, as appropriate and in lieu of making such distribution to such Holder, delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03 <u>Distributions After Allowance</u>. As soon as practicable after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) the Disputed Claim becomes an Allowed Claim, the Debtor, the Reorganized Debtor or the Litigation Trustee, as the case may be, will distribute to the Holder thereof all Distributions to which such Holder is then entitled under this Plan. All Distributions made under this Section of the Plan will be made together with any dividends, payments, or other

-29-

ATLANTA:5326243.1

Distributions made on account of, as well as any obligations arising from, the distributed property as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Holders included in the applicable Class.

Section 5.04 <u>Litigation Trust</u>. The Litigation Trust shall be established to receive the General Unsecured Creditors Fund and the Assigned Avoidance Actions of the Debtor and to distribute such Cash or proceeds of the Assigned Avoidance Actions to certain Creditors in accordance with the Plan. Except as otherwise expressly provided in the Plan, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, the General Unsecured Creditors Fund shall automatically vest in the Litigation Trust, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests of Creditors and equity security holders on the Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished subject to the rights of Holders of Allowed Class 2 Bond Claim, Class 3 Fagen Claim and Class 5 General Unsecured Claims to obtain distributions provided for in this Plan. In no event shall any property of any kind be returned by, or otherwise transferred from, the Litigation Trust to the Reorganized Debtor.

The Litigation Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d) and shall be treated as a grantor trust for United States federal income tax purposes. All parties will be required to treat, for federal income tax purposes, the Litigation Trust as a grantor trust of which the Litigation Trust beneficiaries are the owners and grantors. The Debtor shall appoint Fife M. Whiteside to serve as Litigation Trustee. Under the supervision of the Litigation Trust Board, the Litigation Trustee shall have the authority to manage the day-to-day operations of the Litigation Trust, including, without limitation, by disposing of the assets of the Litigation Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in this Section 5.04 and the Litigation Trust Agreement. Expenses of the Litigation Trust, including the expenses of the Litigation Trustee and his representatives and professionals, will be satisfied solely from the assets of the Litigation Trust and its proceeds, as set forth in the Litigation Trust Agreement. The holders of Allowed Claims in Classes 2, 3 and 5 and other Allowed Claims treated as General Unsecured Claims under the Plan will be the grantors, and owners of the Litigation Trust. On the Effective Date, the Litigation Trust will be treated as formed by the transfer of the General Unsecured Creditors Fund and the Assigned Avoidance Actions (if such Avoidance Actions are not waived and released) from the Debtor to the holders of Claims who receive the beneficial interests in the Litigation Trust pursuant to the Plan (with each holder receiving in a taxable transaction an undivided interest in such assets in accordance with its economic interests in such assets) and a deemed transfer by such holders to the Litigation Trust. Accordingly, all parties must treat the Litigation Trust as a grantor trust of which the holders of interests in the Litigation Trust are the owners and grantors, and treat the Litigation Trust beneficiaries as the direct owners of an undivided interest in the Litigation Trust assets, consistent with their economic interests therein, for all federal income tax purposes. The Litigation Trustee will maintain, in accordance with the Litigation Trust Agreement, an escrow of any distributable amounts required to be set aside on account of any disputed claims, which disputed claims will be treated in accordance with the terms of the Litigation Trust Agreement. No Cause of Action released by the Plan shall be considered an Assigned Cause of Action. The Litigation Trust Board will determine the fair market value of each beneficial Litigation Trust

ATLANTA:5326243.1

interest, and the Litigation Trustee and holders of such interests will be required to use the valuation consistently for federal income tax purposes. The Litigation Trustee will file returns for the Litigation Trust as a grantor trust. All income of the Litigation Trust will be subject to federal income tax on a current basis. The Litigation Trust Agreement will provide for the allocation of the Litigation Trust's taxable income and who will be responsible for any tax liability due as a result of such income. Taxable income or loss allocated to a Litigation Trust beneficiary will be treated as income or loss with respect to such Litigation Trust beneficiary's undivided interest in the Litigation Trust assets, and not as income or loss with respect to its prior respective Claim.

Subject to the supervision of the Litigation Trust Board, the Litigation Trustee will have broad powers, without approval of the Bankruptcy Court, (a) to pursue, compromise, release, or decline to pursue any Assigned Cause of Action or Claims litigation concerning General Unsecured Claims, based upon the Litigation Trustee's assessment of the net benefit to holders of Claims in connection therewith (taking into account the costs and expenses projected to be incurred in connection therewith, the likelihood of success on the merits, and the range of potential recoveries to be received by the Litigation Trust); (b) subject to applicable rules of professional conduct, to retain professionals in connection with the Assigned Avoidance Actions, Claims litigation concerning General Unsecured Claims, and the pursuit and evaluation of the same; (c) to pay or cause to be paid from the Litigation Trust all costs and expenses of liquidating and administering the Litigation Trust, including the fees of the Litigation Trustee permitted by the Litigation Trust Agreement, which costs and expenses will have priority over Distributions to holders of Claims; (d) to determine the amount of retained proceeds and retain Cash as necessary to ensure appropriate Distributions pursuant to the Plan; and (e) to take other necessary and appropriate actions customary for a litigation trustee, claims administrator, or disbursing agent under a bankruptcy plan of reorganization. The Litigation Trust Board will consist of three members, one member each appointed by the Holder of the Bond Claim, the Holder of the Fagen Claim and the Committee.

Section 5.05 <u>Delivery of Distributions</u>. Except as otherwise provided in the Plan, subject to Bankruptcy Rule 9010, the Reorganized Debtor or the Liquidation Trustee shall make distributions to holders of Allowed Claims at the address for each holder indicated on the Debtor's records as of the date of any such distribution; <u>provided</u>, <u>however</u>, that the manner of such distributions shall be determined at the discretion of Reorganized Debtor; and, <u>provided further</u>, <u>however</u>, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any proof of claim filed by that holder. In the event that any distribution to any holder is returned as undeliverable, the Agents shall use reasonable efforts to assist the Reorganized Debtor to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all Unclaimed Property or interest in property shall revert to the Reorganized Debtor, and the Claim of any other holder to such Property or Interest in Property shall be discharged and forever barred.

Section 5.06 <u>Method of Cash Distributions</u>. Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided

ATLANTA:5326243.1

in any relevant agreement or applicable law at the option of the Litigation Trustee or the Debtor.

Section 5.07 <u>Failure to Negotiate Checks</u>. Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Any amounts returned to the Debtor, the Reorganized Debtor or the Litigation Trustee in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Litigation Trustee or the Debtor, as the case may be. Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after the date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.08 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor or its assets, the Litigation Trustee or the Litigation Trust.

Section 5.08 <u>Unclaimed Distributions</u>. All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Section 5.07 of the Plan. All Unclaimed Property will be retained by and will vest in the Litigation Trust. All full or partial payments made by the Debtor and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtor, the Reorganized Debtor or the Litigation Trustee pursuant to the Plan. Nothing contained in the Plan shall require the Debtor, the Reorganized Debtor or the Litigation Trustee to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtor and any Claims filed in the Chapter 11 Case. Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.08 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor or its assets, the Reorganized Debtor or its assets, or the Litigation Trustee or the Litigation Trust.

Section 5.09 <u>Limitation on Distribution Rights</u>. If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

Section 5.10 <u>Fractional Dollars</u>. Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole dollar, such Cash shall be treated as Unclaimed Property pursuant to Section 5.08 of this Plan.

Section 5.11 <u>Compliance With Tax Requirements</u>. In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtor and/or the Litigation Trustee shall file

ATLANTA:5326243.1

such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtor, the Reorganized Debtor or the Litigation Trustee, the Debtor, the Reorganized Debtor or the Litigation Trustee may, at their or its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

Section 5.12 <u>De Minimis Distributions</u>. No Cash payment of less than fifty ($50.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim, excepting on account of Convenience Claims.

Section 5.13 <u>No Payment or Distribution Pending Allowance</u>. All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtor, the Reorganized Debtor or the Litigation Trustee and the Holder of such Claim, by operation of law, by Final Order, or by this Plan. Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 5.14 <u>Estimation of Claims</u>. The Debtor (with the consent of the Agents) or the Litigation Trustee may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the pendency of litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount shall constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to this Plan or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (with the consent of the Agents) or the Litigation Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

Section 5.15 <u>No Interest on Claims</u>. Except as set forth in the Plan or in a Final Order of the Bankruptcy Court entered in the Cases, no holder of any Claim will be entitled to interest accruing after the Petition Date on such Claim, nor to fees, costs or charges provided under any agreement under which such Claim arose and that were incurred after the Petition Date. Unless otherwise specifically provided for in this Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes and Allowed Claim.

Section 5.16 <u>Distributions Only On Timely-Filed, Allowed Claims</u>. No payments of Cash or other consideration of any kind will be made on account of any Disputed Claim until

-33-

such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim. Except as otherwise ordered by the Bankruptcy Court, no payments shall be made on account of Claims filed after the Bar Date.

Section 5.17 <u>Record Date For Distributions</u>. As of the close of business on the Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or the Agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or equity interests occurring on or after the Record Date. The Debtor, the Reorganized Debtor, the Litigation Trustee and the Agents shall have no obligation to recognize any transfer of any Claims or equity interests occurring after the Record Date.

Section 5.18 <u>Survival Of Certain Corporate Indemnities</u>. The obligations of the Debtor pursuant to its operating agreement and other governing documents to indemnify persons serving on or after the Petition Date as officers, directors, agents, or employees of the Debtor with respect to actions, suits, and proceedings against the Debtor or such officers, directors, agents, or employees, based upon any act or omission for or on behalf of the Debtor occurring on or after the Petition Date, shall not be discharged or impaired by the confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtor pursuant to the Plan and shall continue as obligations of the Reorganized Debtor.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

Section 6.01 <u>Treatment of Executory Contracts and Unexpired Leases</u>. All executory contracts and unexpired leases of the Debtor shall be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts set forth in Exhibit 1 hereto, <u>provided</u>, <u>however</u>, that the Debtor shall have the right, on or before the hearing on Plan Confirmation, to modify the Schedule of Assumed Contracts by filing a Plan Supplement, subject to the consent of the Agents, thus, by removing an executory contract or unexpired lease, providing for its rejection pursuant to this Section 6.01 or by adding any executory contract or unexpired lease, providing for its assumption and assignment pursuant to this Section 6.01.

Section 6.02 <u>Cure of Defaults for Assumed Contracts and Leases</u>. The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Plan, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases contained in the Schedule of Assumed Contracts set forth in Exhibit 1 hereto, shall be governed by the Confirmation Order or other order approving or authorizing the assumption of such executory contracts. All cure amounts shall be satisfied via payment by the Reorganized Debtor of the full amount of each cure amount listed in the

-34-

Schedule of Assumed Contracts via twelve (12) equal monthly payments, without interest, commencing thirty (30) days after the Effective Date.

Section 6.03 <u>Bar Date for Claims for Rejection Damages</u>. Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article VI of the Plan must be filed with the Bankruptcy Court no later than the later of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease. Any Claim not filed within such time period shall be forever barred. The Debtor, the Reorganized Debtor and the Litigation Trustee shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of Section 8.04 of this Plan.

Section 6.04 <u>Treatment of Rejection Claims</u>. The Bankruptcy Court shall determine any objections Filed in accordance with Section 8.04 hereof at a hearing to be held on a date to be determined by the Bankruptcy Court. Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as a Class 5 Claim in accordance with Article III of the Plan.

Section 6.05 <u>Rejection of Contracts and Leases</u>. The entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption and rejection of the executory contracts assumed and rejected pursuant to Article VI of the Plan

Section 6.06 <u>Waiver of Rejection Damages by FUEL</u>. If Classes 1, 2, 3, 5 and 6 each votes as a Class to accept the Plan, then FUEL by voting as Class 7 to accept the Plan is deemed to waive, solely in connection with this Plan, any and all claims against the Debtor, specifically including, without limitation, any claims FUEL could have asserted against the Debtor, in a sum of not less than $107,734, in connection with the Debtor's rejection of its executory contracts with FUEL. If, however, any of Classes 1, 2, 3, 5 or 6 votes as a Class to reject the Plan, then FUEL shall not be deemed to have waived any of the foregoing rights or claims, without regard to whether FUEL votes as Class 7 to accept the Plan, and any claims of FUEL against the Debtor shall be retained.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.01 <u>Property of the Debtor's Estate</u>. The Property of the Debtor's Estate, including without limitation, all of the Debtor's claims and causes of action against third parties other than the Assigned Avoidance Actions shall revest in the Reorganized Debtor on the Effective Date.

Section 7.02 <u>Continued Corporate Existence</u>. On the Effective Date, the Reorganized Debtor shall convert to a Delaware limited liability company which shall be governed by the New LLC Agreement, which shall, among other things, (i) authorize the issuance of New Membership Interests, and (ii) prohibit the issuance of nonvoting equity interests, only so long

ATLANTA:5326243.1

as, and to the extent that, the issuance of nonvoting securities is prohibited. The New LLC Agreement shall be substantially in the form set forth in an exhibit to the Disclosure Statement and shall be acceptable in form and substance to the Agents. The Reorganized Debtor may, if required in connection with obtaining Exit Financing, create a member managed Delaware limited liability company and contribute all assets of the Debtor's Estate (not otherwise distributed pursuant to this Plan) to such newly formed entity in satisfaction of any Exit Financing requirements.

Section 7.03 <u>Initial Officers</u>. The persons serving as executive officers of the Debtor immediately before the Effective Date shall maintain their current positions after the Effective Date. The identities, affiliations and other information relating to the initial officers of the Reorganized Debtor will be disclosed in an exhibit to the Disclosure Statement and shall be acceptable to the Agents.

Section 7.04 <u>New Board of Managers</u>. Each member of the board of managers of the Debtor shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, resolution, order or rule of the vote, consent, or authority of any Debtor. The board of managers of the Reorganized Debtor will have five members. The initial five managers will be designated by the Agents (with the consent of the Required Lenders), subject to adjustment as follows: (i) upon the occurrence of the First Trigger Event, the right of the holders of the New Preferred Units to designate five managers will be reduced to four and the holders of the New Class A Units will be permitted to designate one manager; and (ii) upon the occurrence of the Second Trigger Event, the right of the holders of the New Preferred Units to designate managers will be eliminated and the holders of New Class B Units will have the right to designate one manager and the holders of New Class A Units will have the right to designate four managers. Prior to the Second Trigger Event, one of the members of the board of managers designated by the holders of the New Preferred Units shall be the Chief Executive Officer of the Reorganized Debtor. After the Second Trigger Event, one of the members of the board of managers designated by the holders of the New Class A Units shall be the Chief Executive Officer of the Reorganized Debtor. In the event that the New Class A Units are not issued pursuant to the Plan, the right to designate all managers will remain with the holders of the New Preferred Units and the New Class B Units, respectively.

Section 7.05 <u>Powers and Duties of the Litigation Trustee</u>. The Litigation Trustee shall administer the Litigation Trust and its assets in accordance with this Plan, the Litigation Trust Agreement, and the other Litigation Trust Documents and shall be responsible for, among other things, making certain distributions required under this Plan. From and after the Effective Date and continuing through the date of entry of a Final Decree, the Litigation Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Case and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtor in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere;

ATLANTA:5326243.1

and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the Litigation Trust or the Litigation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

Section 7.06 <u>Restructuring Transactions</u>. On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion (including related formation), disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion (including related formation) or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

Section 7.07 <u>Corporate Action</u>. Upon the entry of the Confirmation Order, all corporate actions contemplated by this Plan shall be deemed authorized and approved in all respects, including (i) the transactions contemplated by Article 7.02 hereof, (ii) the adoption of the New LLC Agreement, (iii) the conversion of the Reorganized Debtor to a Delaware limited liability company, (iv) the filing of new certificates of formation, (v) the initial selection of managers and officers for the Reorganized Debtor, (vi) the issuance of New Membership Interests, (vii) the execution and entry into the Exit Financing, (viii) the execution and delivery of the agreements, documents and instruments contemplated by the Plan (which shall be acceptable in form and substance to the Agents) and the Plan Supplement in the name and on behalf of the Debtor, and (ix) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date), in each case unless otherwise provided in this Plan. All matters provided for under this Plan involving the corporate structure of the Debtor and Reorganized Debtor or corporate action to be taken by or required of the Debtor or the Reorganized Debtor will be deemed to occur and be effective as of the Effective Date, if no such other date is specified in such documents, and shall be authorized, approved, adopted and, to the extent taken prior to the Effective Date, ratified and confirmed in all respects and for all purposes without any requirement of further action by holders of Claims or Interests, directors or managers of the Debtor or the Reorganized Debtor, as applicable, or any other Person, except for applicable filings necessary to convert the Debtor into a Delaware limited liability company, and to effect the filing of the new certificates of formation respecting the Debtor.

Section 7.08 <u>Issuance of New Membership Interests</u>. The issuance of the New Membership Interests by the Reorganized Debtor is authorized without the need for any further corporate action or without any further action by a holder of Claims or Interests. The New Membership Interests of the Reorganized Debtor shall consist of the New Preferred Units, New

ATLANTA:5326243.1

Class A Units and New Class B Units. At the close of business on the Effective Date, the New Preferred Units and the New Class B Units shall be issued to the Holders of the Senior Secured Lender Claims. The New Class A Units shall be issued to the holders of the Class A Membership Units. All of the New Membership Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Upon the Effective Date, the New LLC Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each holder of New Membership Interests shall be bound thereby, in each case, without need for execution by any party thereto other than the Reorganized Debtor.

Section 7.09 <u>Listing of New Membership Interests.</u> The Reorganized Debtor shall not be obligated to list the New Membership Interests on a national securities exchange. In order to ensure that the Reorganized Debtor will not become subject to the reporting requirements of the Exchange Act except in connection with a public offering, the New Membership Interests will be subject to certain trading restrictions to limit the number of record holders thereof as shall be more fully described in the Plan Supplement.

Section 7.10 <u>Cancellation of Securities and Agreements</u>. On the Effective Date, except as otherwise specifically provided for in this Plan: except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory contracts and unexpired leases assumed by the Debtor, or (iii) otherwise as provided herein, all the agreements and other documents evidencing the Claims, equity interests, or rights of any holder of a Claim or equity interest Impaired under the Plan shall be cancelled, <u>provided</u>, <u>however</u>, that the Pre-Petition Credit Agreement shall continue in effect solely for the purposes of (a) allowing the Pre-Petition Agent to make distributions on account of Class 1 and to perform such other necessary administrative functions with respect thereto, and (b) permitting such parties to maintain any rights or liens they may have for fees, costs, and expenses thereunder.

Section 7.11 <u>Exit Financing</u>. On the Effective Date, the Reorganized Debtor shall enter into the Exit Financing, the terms and conditions of which shall be acceptable to the Agents. Confirmation shall be deemed approval of the Exit Financing (including the transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Financing, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for the Reorganized Debtor to enter into and execute the Exit Financing, and such other documents as the Exit Financing Lenders may require, subject to such modifications as the Reorganized Debtor may deem to be reasonably necessary to consummate the Exit Financing with the consent of the Agents. The Reorganized Debtor may use the Exit Financing for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs. Upon the date the Exit Financing Agreement becomes effective, (i) the Debtor and the Reorganized Debtor are authorized to execute and deliver the Exit Financing Agreement and the Exit Financing Documents and perform their obligations thereunder including, without the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Financing Documents shall constitute the legal, valid and binding obligations of the Reorganized Debtor, enforceable in accordance with their respective terms, and (iii) no obligation, payment, transfer or grant of security under the Exit Financing Documents shall be stayed, restrained, voidable, or

ATLANTA:5326243.1

recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. The Debtor and the Reorganized Debtor, as applicable, are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence of perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

Section 7.12 <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

Section 7.13 <u>Effective Date Fees and Expenses</u>. From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for Bankruptcy Court approval, pay the reasonable fees and expenses of professional persons retained by the Debtor, the Reorganized Debtor, and the Agents and incurred after the Effective Date, including, without limitation, fees and expenses incurred in connection with the implementation and consummation of the Plan.

Section 7.14 <u>Post- Effective Date Notice Limited</u>. From and after the Effective Date, any person seeking relief from the Bankruptcy Court in the Chapter 11 Case shall be required to provide notice only to the Reorganized Debtor, the Litigation Trustee, the United States Trustee, the Pre-Petition Agent and their respective counsel, to any person whose rights are directly affected by the relief sought, and to other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Bankruptcy Court and serve a copy of such notice on counsel to the Debtor and the Litigation Trustee.

Section 7.15 <u>Plan Supplement</u>. The Plan Supplement, acceptable in form and substance to the Agents, and filed with the Clerk of the Bankruptcy Court in the Chapter 11 Case at least five (5) days prior to the last day on which holders of Claims may vote to accept or reject the Plan; <u>provided</u>, <u>however</u>, that the Exit Financing Commitment Letter shall be filed with the clerk of the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing. The Plan Supplement shall be posted on the website of the Claims Agent, at www.SWGErestructuring.com, and shall be available to holders of Claims and Interests upon written request to the Debtor. The Debtor may not modify documents contained in the Plan Supplement without the consent of the Agents.

ATLANTA:5326243.1

# ARTICLE VIII
## PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST

Section 8.01 <u>Preservation of Rights</u>. Except to the extent that any Claim is Allowed during the Chapter 11 Case or expressly by this Plan or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtor to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor, the Reorganized Debtor or the Litigation Trustee with respect to any Claim or Interest, including, but not limited to, all rights of the Debtor, the Reorganized Debtor or the Litigation Trustee to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

Section 8.02 <u>Rights of Action</u>. Except as otherwise provided in this Plan or the Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor or the Litigation Trustee will retain and may exclusively enforce any Retained Actions subject only to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and the Confirmation Order's approval of the Plan shall be deemed a res judicata determination of such rights to retain and exclusively enforce such Retained Actions, and none of such Retained Actions is deemed waived, released or determined by virtue of the entry of the Confirmation Order or the occurrence of the Effective Date, notwithstanding that the specific Retained Actions are not identified or described.

Absent an express waiver or release as referenced above, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Reorganized Debtor or the Litigation Trustee from utilizing, pursuing, prosecuting or otherwise acting upon all or any of its Retained Actions and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Actions upon or after Confirmation, the Effective Date or the consummation of the Plan. By example only, and without limiting the foregoing, the utilization or assertion of a Retained Action, or the initiation of any proceeding with respect thereto against a Person, by the Reorganized Debtor or the Litigation Trustee shall not be barred (whether by estoppel, collateral estoppel, res judicata or otherwise) as a result of (a) the solicitation of a vote on the Plan from such Person or such Person's predecessor in interest; (b) the Claim, Interest or Administrative Claim of such Person or such Person's predecessor in interest having been listed in a Debtor's Schedules, list of Holders of Interests, or in the Plan, Disclosure Statement or any exhibit thereto; (c) prior objection to or allowance of a Claim or, Interest of the Person or such Person's predecessor in interest; or (d) Confirmation of the Plan.

Notwithstanding any allowance of a Claim, the Reorganized Debtor and the Litigation Trustee reserve the right to seek, among other things, to have such Claim disallowed if the Reorganized Debtor or the Litigation Trustee, at the appropriate time, determines that it has a defense under section 502(d) of the Bankruptcy Code; for example, the Reorganized Debtor or

ATLANTA:5326243.1

the Litigation Trustee holds an Avoidance Action against the Holder of such Claim and such Holder after demand refuses to pay the amount due in respect thereto.

Section 8.03 <u>Setoffs</u>. Except to the extent that any Claim is Allowed, the Reorganized Debtor or Litigation Trustee, as applicable, may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estate, the Debtor may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Reorganized Debtor or Litigation Trustee of any such claims or Causes of Action the Reorganized Debtor may have against such Creditors, and all such claims and Retained Actions which are not expressly released, conveyed or compromised pursuant to the Plan, shall vest in the Reorganized Debtor on the Effective Date.

Section 8.04 <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor and the Litigation Trustee shall, subject to the consent of the Agents, have the right, on and after the Effective Date, to File objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline. The foregoing deadlines may be extended by order of the Bankruptcy Court. An objection to any Claim shall be deemed properly served on the Holder thereof if the Reorganized Debtor or Litigation Trustee effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.

After the Effective Date, the Debtor (with the consent of the Agents as to any claim in excess of $25,000), the Reorganized Debtor or the Litigation Trustee, as the case may be, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court; provided that (a) the Debtor, the Reorganized Debtor or the Litigation Trustee, as the case may be, shall promptly File with the Bankruptcy Court a written notice of any settlement or compromise of a Claim that results in an Allowed Claim in excess of $500,000 and (b) the United States Trustee shall be authorized to contest the proposed settlement or compromise by Filing a written objection with the Bankruptcy Court and serving such objection on the Reorganized Debtor or the Litigation Trustee, as the case may be, within 20 days of the service of the settlement notice. If no such objection is Filed, the applicable settlement or compromise shall be deemed final without further action of the Bankruptcy Court.

ATLANTA:5326243.1

# ARTICLE IX
## CONDITIONS TO CONSUMMATION OF THE PLAN

Section 9.01 <u>Confirmation Order</u>.

It shall be a condition to confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 9.03:

        (a)     the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate;

        (b)     the Confirmation Order, in form and substance satisfactory to the Debtor and the Agents, shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto; and

        (c)     the Plan, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance acceptable to the Agents, without prejudice to the Reorganized Debtor's rights under the Plan to alter, amend, or modify certain of the schedules, documents, and exhibits contained in the Plan Supplement, subject to the consent of the Agents.

Section 9.02 <u>Conditions to Effective Date</u>. The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred:

        (a)     the Confirmation Order in form and substance satisfactory to the Debtor and the Agents shall have been entered and shall not be stayed by order of a court of competent jurisdiction;

        (b)     the Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtor to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

        (c)     the Debtor shall have entered into the Exit Financing;

        (d)     all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained;

        (e)     the Debtor shall have appointed the Litigation Trustee, the Litigation Trust Agreement and the other Litigation Trust Documents shall have been executed, and the Litigation Trust shall have received the General Unsecured Creditors Fund; and

        (f)     no order of a court shall have been entered and shall remain in effect restraining the Debtor from consummating the Plan.

Section 9.03 <u>Waiver of Conditions</u>. Each of the conditions set forth in Section 9.01 and 9.02 may be waived in whole or in part by the Debtor, with the consent of the Agents, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

ATLANTA:5326243.1

Section 9.04 <u>Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan</u>. In the event that one or more of the conditions specified in Section 9.02 of the Plan have not occurred (or been waived), upon notification submitted by the Debtor to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estate shall revest in the Debtor's Estate; (d) the Debtor and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Debtor's obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or any Person or Entity in any further proceedings involving the Debtor.

## ARTICLE X
## EFFECTS OF CONFIRMATION

Section 10.01 <u>Vesting of the Debtor's Assets Free and Clear</u>. On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, and other interests, except as provided herein or in the Confirmation Order. Without limiting the generality of the foregoing, the Liens of the Secured Lenders and any materialmen or mechanic's Liens against Property of the Estate shall be deemed extinguished, cancelled and satisfied on the Effective Date. From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of Property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there was no pending Chapter 11 Case, except as provided herein.

Section 10.02 <u>Continued Corporate Existence</u>. The Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Bankruptcy Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement.

Section 10.03 <u>Discharge</u>.

(a) <u>Discharge of Claims</u>. Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the Distributions to be made hereunder shall be in exchange for and in complete satisfaction, discharge, and release of all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims after the Petition Date, against or in the Debtor or any of its assets or properties and also including any lien securing any Claim, to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based on any act or omission, transaction, or

ATLANTA:5326243.1

other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or has voted to accept the Plan.

Section 10.04 <u>Injunction.</u>

(a) <u>Claims and Interests.</u> *EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING SECTIONS 524 AND 1141 THEREOF, THE ENTRY OF THE CONFIRMATION ORDER SHALL, PROVIDED THAT THE EFFECTIVE DATE OCCURS, PERMANENTLY ENJOIN ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY OR AN INTEREST OR OTHER RIGHT OF AN EQUITY SECURITY HOLDER THAT IS IMPAIRED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE REORGANIZED DEBTOR, THE LITIGATION TRUST, THE LITIGATION TRUSTEE, OR THE PROPERTY OF ANY OF THE FOREGOING ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS OR LIABILITIES OR SUCH TERMINATED INTERESTS OR RIGHTS: (A) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (B) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE OF ANY KIND; (D) ASSERTING ANY SETOFF, OFFSET, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR; AND (E) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER, INCLUDING EMPLOYING ANY PROCESS, THAT DOES NOT CONFORM TO OR COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THIS INJUNCTION SHALL NOT APPLY TO (A) ANY CLAIMS CREDITORS MAY ASSERT UNDER THE PLAN TO ENFORCE THEIR RIGHTS THEREUNDER TO THE EXTENT PERMITTED BY THE BANKRUPTCY CODE OR (B) ANY CLAIMS CREDITORS OR OTHER THIRD PARTIES MAY HAVE AGAINST EACH OTHER, WHICH CLAIMS ARE NOT RELATED TO THE DEBTOR, IT BEING UNDERSTOOD, HOWEVER, THAT ANY DEFENSES, OFFSETS OR COUNTERCLAIMS OF ANY KIND OR NATURE WHATSOEVER WHICH THE DEBTOR MAY HAVE OR ASSERT IN RESPECT OF ANY OF THE CLAIMS OF THE TYPE DESCRIBED IN (A) OR (B) OF THIS PROVISO ARE FULLY PRESERVED.*

(b) <u>Released Claims.</u> *AS OF THE EFFECTIVE DATE, THE CONFIRMATION ORDER SHALL CONSTITUTE AN INJUNCTION PERMANENTLY ENJOINING ANY PERSON THAT HAS HELD, CURRENTLY HOLDS OR MAY HOLD A CLAIM, DEMAND, DEBT, RIGHT, CAUSE OF ACTION OR LIABILITY THAT IS RELEASED PURSUANT TO SECTION 10.06 OF THE PLAN FROM ENFORCING OR ATTEMPTING TO ENFORCE ANY SUCH CLAIM, DEMAND, DEBT, RIGHT, CAUSE OF ACTION OR LIABILITY AGAINST (I) ANY DEBTOR, (II) THE LITIGATION TRUST, (III) ANY RELEASEE, (IV) ANY D&O RELEASEE, OR (V) ANY EXCULPATED PERSON, OR ANY*

ATLANTA:5326243.1

*OF ITS PROPERTY, BASED ON, ARISING FROM OR RELATING TO, IN WHOLE OR IN PART, ANY ACT, OMISSION, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE WITH RESPECT TO OR IN ANY WAY RELATING TO THE CHAPTER 11 CASE, ALL OF WHICH CLAIMS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES SHALL BE DEEMED RELEASED ON AND AS OF THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT WITH RESPECT TO THE FORMER DIRECTORS, OFFICERS AND EMPLOYEES OF THE DEBTOR, THIS INJUNCTION SHALL APPLY ONLY TO THE ENFORCEMENT OF CLAIMS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES WITH RESPECT TO WHICH SUCH FORMER DIRECTORS, OFFICERS AND EMPLOYEES WOULD BE ENTITLED TO INDEMNIFICATION FROM THE DEBTOR UNDER CONTRACT OR LAW; AND, PROVIDED FURTHER, HOWEVER, THAT THIS INJUNCTION SHALL NOT APPLY TO (A) ANY CLAIMS CREDITORS MAY ASSERT UNDER THE PLAN TO ENFORCE THEIR RIGHTS THEREUNDER TO THE EXTENT PERMITTED BY THE BANKRUPTCY CODE OR (B) ANY CLAIMS CREDITORS OR OTHER THIRD PARTIES MAY HAVE AGAINST EACH OTHER, WHICH CLAIMS ARE NOT RELATED TO THE DEBTOR, IT BEING UNDERSTOOD, HOWEVER, THAT ANY DEFENSES, OFFSETS OR COUNTERCLAIMS OF ANY KIND OR NATURE WHATSOEVER WHICH THE DEBTOR MAY HAVE OR ASSERT IN RESPECT OF ANY OF THE CLAIMS OF THE TYPE DESCRIBED IN (A) OR (B) OF THIS PROVISO ARE FULLY PRESERVED.*

Section 10.05 <u>Exculpation</u>. None of the Debtor, the Reorganized Debtor, the Litigation Trustee or any Exculpated Person, nor any of their respective members, employees, officers, directors, agents, advisors, attorneys, or financial advisers, shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of its agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Case, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case, <u>provided</u>, <u>however</u>, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct, and in all respects they shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Debtor, the Reorganized Debtor, the Committee, the Senior Secured Lenders, the DIP Lenders, the Agents, and each of their respective members, employees, officers, directors, agents, advisors, attorneys, and financial advisers shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to, among others, Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing. Nothing herein shall be construed, however, to relieve the Reorganized Debtor, the Litigation Trustee, or any other party, from performing its respective obligations under the Plan.

ATLANTA:5326243.1

Section 10.06  Releases.

(a)    Releases by Debtor. (i) Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in its individual capacity and as Debtor in possession, will be deemed to have forever released, and waived the Releasees and the D&O Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor, the Reorganized Debtor or the Litigation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan; provided, however, that (a) no Releasee or D&O Releasee shall be released from any Claims, obligations, suits, judgments, debts or Causes of Action arising out of or in connection with indebtedness for money borrowed by any such person from any of the Debtor and (b) no Cause of Action against any insurer arising out of or relating to matters for which the Debtor would otherwise be liable or suffer an insurable loss shall be released, including without limitation, any Cause of Action against the Debtor's directors and officers insurance carrier(s).    Anything to the contrary above notwithstanding, to the extent the Dollar Family Group Compromise is approved contemporaneously with Confirmation of the Plan, the Debtor will release the members of the Dollar Family Group in accordance with to the Dollar Family Group Compromise on the Confirmation Date, and seeks approval of the Dollar Family Group Compromise under Bankruptcy Code Section 1123(b)(3)(A).

(b)    Releases by Holders of Claims and Interests. Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of the Persons set forth below under the Plan and, if applicable, the Cash, securities, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim or Interest who votes in favor of the Plan or is presumed to have voted in favor of the Plan pursuant to section 1126(f) of the Bankruptcy Code shall be deemed to have forever waived and released (i) the Debtor, (ii) the Litigation Trustee, (iii) the Litigation Trust, (iv) the Releasees, and (v) the D&O Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor or Litigation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan; provided, however, that this Section 10.03(b) shall not release any Releasees or the D&O Releasee from any Causes of Action held by a Governmental Unit

-46-

existing as of the Effective Date based on (i) any criminal laws of the United States or any domestic state, city or municipality or (ii) sections 1104-1109 and 1342(d) of ERISA.

Section 10.07 <u>Other Documents and Actions</u>. The Debtor is authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan, provide such actions and documents are acceptable in form and substance to the Agents.

Section 10.08 <u>Term of Injunctions or Stays</u>. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.09 <u>Preservation of Insurance</u>. Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair (a) the enforceability of insurance policies that may cover Claims against the Debtor or any other Person or Entity or (b) the continuation of workers' compensation programs in effect, including self-insurance programs.

Section 10.10 <u>Guaranties</u>. Notwithstanding the existence of guaranties by the Debtor of obligations of any Entity or Entities, and the Debtor's joint obligations with another Entity or Entities with respect to the same obligations, all Claims against the Debtor based upon any such guaranties shall be satisfied and released in the manner provided in this Plan and the Holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtor.

Section 10.11 <u>Subordination Rights</u>. Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

Section 10.12 <u>Avoidance and Recovery Actions Preserved</u>. From and after the Effective Date, the Reorganized Debtor shall have the right to prosecute any avoidance, equitable subordination, or recovery Cause of Action arising under Sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belongs to the Debtor and has not been expressly compromised, settled, or released pursuant to Article X, Section 10.06 or any other provision of the Plan, or by an order of the Bankruptcy Court entered prior to the Confirmation Date, or assigned to the Litigation Trustee under the Plan.

Section 10.13 <u>Other Causes of Action Preserved</u>. Except for any Cause of Action that has been expressly compromised, settled, or released pursuant to the Plan or an order of the Bankruptcy Court entered prior to the Confirmation Date, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any right or Cause of Action that the Debtor or the Reorganized Debtor may have, or which the Reorganized Debtor may choose to assert on behalf of the Estate pursuant to any provision of the Bankruptcy Code or

-47-

any applicable non-bankruptcy law, including (a) any claim against any person or entity, to the extent that such person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff seeking affirmative relief against the Debtor, the Reorganized Debtor, or their officers, directors, or representatives; and (b) the turnover of any property of the Estate. Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date against or with respect to any Claim left unimpaired by the Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that it had immediately prior to the Petition Date as if the Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Case had not been commenced. **EXCEPT FOR ANY CAUSE OF ACTION THAT HAS BEEN EXPRESSLY COMPROMISED, SETTLED, OR RELEASED PURSUANT TO THE PLAN OR AN ORDER OF THE COURT ENTERED PRIOR TO THE CONFIRMATION DATE, ALL CLAIMS AND CAUSES OF ACTION OF THE DEBTOR AND ITS ESTATE SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CLAIMS AND CAUSES OF ACTION BY THE REORGANIZED DEBTOR OR THE LITIGATION TRUSTEE SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.**

Section 10.14 <u>Causes of Action Retained by Debtor or Assigned to the Litigation Trustee</u>. From and after the Effective Date, the Reorganized Debtor will have the right (subject to the assignment of the Assigned Causes of Action to the Litigation Trustee, in which event the Litigation Trustee will have the right) to prosecute any avoidance, equitable subordination or recovery Cause of Action arising under Sections 105, 502(d), 510, 542-551, and 553 of the Bankruptcy Code that belongs to the Debtor and has not been expressly compromised, settled, or released pursuant to the Plan or an order of the Bankruptcy Court entered prior to the Confirmation Date. Except for any Cause of Action that has been expressly compromised, settled, or released pursuant to the Plan or an order of the Bankruptcy Court entered prior to the Confirmation Date, nothing contained in the Plan or the Confirmation Order will be deemed to be a waiver or relinquishment of any right or Cause of Action that the Debtor or the Reorganized Debtor may have, or which the Reorganized Debtor may choose to assert on behalf of the Estate pursuant to any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation (a) any claim against any person or entity, to the extent that such person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff seeking affirmative relief against the Debtor, the Reorganized Debtor, or their officers, directors, or representatives; (b) the turnover of any property of the Estate; and (c) Causes of Action against current or former directors, shareholder, officers, professionals, and other persons relating to acts or omissions occurring on or prior to the Petition Date, <u>provided</u>, <u>however</u>, that the Assigned Avoidance Actions will be assigned to the Litigation Trustee.

Section 10.15 <u>Allocation of Plan Distributions between Principal and Interest</u>. To the extent that any Claim scheduled to receive a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to

ATLANTA:5326243.1

the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

## ARTICLE XI
## RETENTION OF JURISDICTION

Section 11.01 <u>Exclusive Jurisdiction of Bankruptcy Court</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date and until the Chapter 11 Case is closed, exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 328, 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the Effective Date;

(c)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)     ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(e)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Reorganized Debtor or the Litigation Trustee in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

(f)     determine and resolve any case, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan and the Plan Supplement) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(g)     hear any application of the Debtor, the Reorganized Debtor or the Litigation Trustee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy

ATLANTA:5326243.1

Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(h)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(i)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Litigation Trust, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(k)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)     hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(m)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Litigation Trust;

(n)     enter a Final Decree closing the Chapter 11 Case;

(o)     determine and resolve any and all controversies relating to the rights and obligations of the Litigation Trustee or the Disbursing Agent in connection with the Chapter 11 Case;

(p)     allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(q)     permit the Debtor or the Reorganized Debtor (and the Litigation Trustee, to the extent provided for in the Plan, or the Litigation Trust Agreement) to recover all assets of the Debtor and Property of its Estate, wherever located;

(r)  hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or the Debtor's Estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Case, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(s)  hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed or commenced after the Effective Date that may be commenced by the Litigation Trustee thereafter, including Retained Actions, proceedings with respect to the rights of the Litigation Trustee to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any claim or Cause of Action that the Debtor may have had;

(t)  to consider and act on the compromise of any Claim against, or Interest in, the Debtor, or any Cause of Action asserted on behalf of the Debtor's Estate; provided, however, that there shall be no requirement that the Reorganized Debtor or the Litigation Trustee seek Bankruptcy Court approval of compromises and settlements except as provided herein; and

(u)  hear any other matter not inconsistent with the Bankruptcy Code.

Section 11.02 Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, including with respect to the matters set forth above in Section 11.01 hereof, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

# ARTICLE XII
# MISCELLANEOUS PROVISIONS

Section 12.01 Binding Effect of Plan. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, the Litigation Trustee, the Litigation Trust, the Agents, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of its heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

Section 12.02 Withdrawal of the Plan. The Debtor reserves the right (subject to the consent of the Agents), at any time prior to Confirmation of the Plan, to withdraw the Plan. If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

Section 12.03 Final Order. Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor or, after the Effective Date, the Litigation Trustee upon written notice to the Bankruptcy Court. No such waiver shall

ATLANTA:5326243.1

prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

Section 12.04 <u>Modification of the Plan</u>. The Debtor may alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date, provided any such modification shall be acceptable in form and substance to the Agents. After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtor may, subject to the consent of the Agents and so long as the treatment of Holders of Claims or Interests under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; <u>provided</u>, <u>however</u>, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

Section 12.05 <u>Business Days</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.06 <u>Severability</u>. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Debtor reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

Section 12.07 <u>Governing Law</u>. EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF GEORGIA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF GEORGIA.

Section 12.08 <u>Dissolution of Committee</u>. On the Effective Date, the Committee shall be automatically dissolved and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtor, the Chapter 11 Case, the Plan or its implementation.

ATLANTA:5326243.1

Section 12.09 <u>Post-Confirmation Operating Reports</u>. The Reorganized Debtor shall file post-Confirmation operating reports as required by the United States Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

Section 12.10 <u>Notices</u>. Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

Southwest Georgia Ethanol, LLC
P.O. Box 386
Camilla, GA 31730-0386

With a copy to:

J. Michael Levengood
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308

To Litigation Trustee:

Fife M. Whiteside
1124 Lockwood Avenue
Columbus, Georgia 31906

To the Pre-Petition Agent:

Joanna W. Anderson
Gleacher Products Corp.
1290 Avenue of the Americas, 5th Floor
New York, NY 10104

With a copy to:

Scott L. Alberino
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building,
1333 New Hampshire Avenue, NW
Washington, DC 20036

Section 12.11 <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, the Debtor shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan, provided such documents shall be acceptable in form and substance to the Agents.

-53-

Section 12.12 <u>Section 1125 of the Bankruptcy Code</u>. The Debtor has, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and each of its Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals), have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

Section 12.13 <u>Section 1146 Exemption</u>. To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtor, the Reorganized Debtor or the Litigation Trust, shall not be taxed under any state or local law imposing a document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or fee or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

Section 12.14 <u>Section 1145 Exemption</u>. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Membership Interests and interests in the Litigation Trust shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of the New Membership Interests. In addition, under section 1145 of the Bankruptcy Code, any New Membership Interests and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of any the New Membership Interests or instruments; (3) the restrictions, if any, on the transferability of the New Membership Interests and instruments; and (4) applicable regulatory approval.

Section 12.15 <u>Time</u>. Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

ATLANTA:5326243.1

Section 12.16 <u>No Attorneys' Fees</u>. No attorneys' fees will be paid by the Debtor with respect to any Claim or Interest except as expressly specified herein or by order of the Bankruptcy Court.

Section 12.17 <u>No Injunctive Relief</u>. No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

Section 12.18 <u>Continued Confidentiality Obligations</u>. Pursuant to the terms thereof, members of and advisors to any Committee, any other Holder of a Claim or Interest, and its predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with this Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

Section 12.19 <u>No Admissions or Waivers</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Section 12.20 <u>Entire Agreement</u>. The Plan (and all Exhibits to the Plan and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.21 <u>Waiver</u>. The Debtor reserves the right to waive any provision of this Plan (with the consent of the Agents) to the extent such provision is for the sole benefit of the Debtor and/or its officers or directors.

## <u>CONFIRMATION REQUEST</u>

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

*[signature follows]*

Dated: August 26, 2011

SOUTHWEST GEORGIA ETHANOL, LLC,
Debtor in Possession

By: _____
Lawrence Kamp
Chief Financial Officer

# Exhibit 1

## SCHEDULE OF ASSUMED CONTRACTS

| Counterparty | Contract Description(s) | Cure Amount |
|---|---|---|
| AIRGAS CARBONIC, INC. | Carbon Dioxide Supply Agreement dated June 27, 2008, as first amended by the First Amendment to Carbon Dioxide Supply Agreement dated May 15, 2009, and as second amended by the Second Amendment to Carbon Dioxide Supply Agreement dated July 19, 2010 | $5,798 |
| ALBANY COMMUNICATIONS, INC. | Service Agreement dated April 27, 2010 | $1,422 |
| ALLIEDBARTON SECURITY SERVICES LLC | Security Officer Service Agreement dated December 7, 2007, as amended by the Amendment to Security Officer Service Agreement dated April 6, 2010 | $6,269 |
| CHEMTREAT, INC. | Contract Agreement dated September 1, 2009 | $36,781 |
| CITY OF CAMILLA | Natural Gas Facilities Agreement dated January 23, 2007; Natural Gas Supply and Capacity Agreement dated January 23, 2007; Letter Agreement dated February 5, 2010 | $0 |
| CSX TRANSPORTATION, INC. | Railroad Transportation Contract CSXT 83796 dated September 11, 2007, as first amended by Amendment 1 to Contract CSXT 83796 dated September 7, 2007, as second amended by Railroad Transportation Contract CSXT 83796 Amendment 2 dated January 17, 2008 | $912,100 |

ATLANTA:5326243.1

| | | |
|---|---|---|
| DE LAGE LANDEN | Loan Contract - Security Agreement (JLG 600 AJ Forklift S/N 0300133064); Loan Contract - Security Agreement (Genie GTH842 Forklift S/N GTH0808A-13287) | $3,000 |
| ECO-ENERGY | Ethanol Marketing Contract dated December 29, 2006 | $0 |
| ENVIRONMENTAL ANALYTICS, INC. | Purchase Order dated July 12, 2010 | $0 |
| ERI SOLUTIONS INC. | Purchase Order dated November 3, 2010; ERI Safety Agreement dated November 22, 2010 | $0 |
| FLINT EQUIPMENT CO. | Equipment Rental Agreement dated October 14, 2010 | $0 |
| GENEVA'S CLEANING SERVICES, INC. | Contracts dated October 2, 2009 | $6,996 |
| GEORGIA & FLORIDA RAILWAY, INC. | Industry Track Agreement dated April 18, 2008; License Agreement dated April 18, 2008; Rail Interchange Agreement dated April 18, 2008; Railcar Storage Agreement dated February 25, 2010 | $282,344 |
| GEORGIA POWER COMPANY | Contract for Electric Service dated April 27, 2007; Real Time Pricing Terms and Conditions, together with the Initial Customer Baseline Load (CBL) Agreement for New Accounts, dated May 2, 2007; Contract for Adjustment of 2011 Customer Baseline Loan, Total Fill Option, RTP DAA-3 Rate, dated December 1, 2010; Excess Facilities Charge Agreement, Standard Offer, dated April 27, 2007. | $1,183,963 |
| INTERNATIONAL FIRE PROTECTION, INC. | Service Agreement | $17,240 |
| INVENSYS PROCESS SYSTEMS | Service Agreement dated November 30, 2009 | $18,825 |

ATLANTA:5326243.1

| | | |
|---|---|---|
| INVISION TECHNOLOGIES, LLC | Computer Systems Support and Maintenance Agreement dated February 17, 2009 | $0 |
| JOHN DEERE CONSTRUCTION & FORESTRY COMPANY | Contract *7934: Loan Contract - Security Agreement dated August 8, 2008 (John Deere 544J Wheel Loader, Serial No. 619683); Contract *7935: Loan Contract - Security Agreement dated August 8, 2008 (John Deere 544J Wheel Loader, Serial No. 619675); Contract *7215: Loan Contract - Security Agreement dated August 8, 2008 (John Deere 320 Skid Steer Loader, Serial No. 145524) | $0 |
| MONITORING SOLUTIONS | Purchase Order dated January 25, 2010 | $746 |
| NORTH AMERICAN BIOPRODUCTS CORPORATION | Purchase Agreement dated December 22, 2010 | $0 |
| NOVOZYMES NORTH AMERICA, INC. | Enzyme Supply Agreement dated July 23, 2009 | $207,489 |
| NORFOLK SOUTHERN RAILWAY COMPANY | Master Transportation Contract REG-NS-C-19452 dated November 19, 2007; Appendix A to Transportation Contract REG-NS-C-19452 dated November 19, 2007; Transportation Contract REG-NS-C-19477 dated November 19, 2007; Appendix A to Contract REG-NS-C-19477 dated November 19, 2007 | $1,860,829 |
| SOMAX, INC. | Agreement For Somax Licensed Software dated November 4, 2009 | $0 |

ATLANTA:5326243.1

| | | |
|---|---|---|
| TRINITY INDUSTRIES LEASING COMPANY | Railroad Car Lease Agreement dated November 5, 2007; Amendment No. 1 to Railroad Car Lease Agreement dated November 5, 2007; Amendment to Railroad Car Lease Agreement dated May 29, 2008; Letter Agreement Grain Car Proposal dated January 28, 2009 | $196,687 |

ATLANTA:5326243.1